[Civ. No. 50364. Second Dist., Div. Five. July 27, 1977.]

ALEX T., a Minor, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
THE PEOPLE et al., Real Parties in Interest.

**COUNSEL**

Wilbur F. Littlefield, Public Defender, John J. Gibbons, Harold E. Shabo, Kenneth I. Clayman, Philip A. Zywiciel and Albert J. Menaster, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

John K. Van de Kamp, District Attorney, Donald J. Kaplan and Richard W. Gerry, Deputy District Attorneys, for Real Parties in Interest.

## OPINION

**KAUS, P. J.**—On October 15, 1976, the Probation Department of the County of Los Angeles filed a petition in juvenile court alleging that Alex T., a minor—petitioner in this proceeding—came within the provisions of section 602 of the Welfare and Institutions Code in that on August 16, 1976, he had violated section 381 of the Penal Code, a misdemeanor, commonly known as "glue sniffing." Petitioner denied the allegations of the petition. The matter came on for adjudication on November 3, 1976, when the deputy district attorney announced that he could not proceed because the crime lab had misplaced the physical evidence. The petition was dismissed "without prejudice." An identical petition was filed on December 12, 1976. After several unsuccessful attempts to have the respondent court dismiss the second petition, petitioner has turned to us for help. We issued an alternative writ of mandate.

### ISSUES

Petitioner claims that the threatened proceeding in the superior court denies him equal protection of the laws and his right to a speedy trial.

### Equal Protection

██  The equal protection argument rests on the proposition that if petitioner were an adult, the November 3 dismissal would be a final disposition of the matter, since section 1387 of the Penal Code prevents the People from refiling a dismissed misdemeanor charge.[1] Petitioner in effect claims that equal protection demands a judicial transplant of section 1387 of the Penal Code into the Juvenile Court Law.

We note the obvious: This case does not involve a due process right enjoyed by an adult defendant in a criminal trial and claimed by petitioner to have "equal application to that part of the state juvenile proceeding that is adjudicative in nature." (*McKeiver* v. *Pennsylvania*

---

[1]Section 1387 of the Penal Code reads as follows: "An order for the dismissal of an action pursuant to this chapter is a bar to any other prosecution for the same offense if it is a felony and the action has been previously dismissed pursuant to this chapter, or if it is a misdemeanor; except in those felony cases where subsequent to the dismissal of the felony the court finds that substantial new evidence has been discovered by the prosecution which would not have been known through the exercise of due diligence at or prior to the time of dismissal."

(1971) 403 U.S. 528, 533 [29 L.Ed.2d 647, 653, 91 S.Ct. 1976].) At this point we are only concerned with a challenged legislative classification.

■     The first question is whether, in assessing petitioner's equal protection claim, we go first class or tourist—whether we apply the "strict scrutiny" standard or the traditional "rationality" test. Petitioner argues that the rationale of *People* v. *Olivas* (1976) 17 Cal.3d 236 [131 Cal.Rptr. 55, 551 P.2d 375], mandates strict scrutiny. We disagree.

In *Olivas* the defendant was tried as an adult for misdemeanor assault. Because he was 19 years old at the time of his arrest, the court committed him to the Youth Authority under section 1731.5 of the Welfare and Institutions Code, section 1770 of which permitted the Youth Authority to incarcerate him for more than three years. The maximum possible jail term which could have been imposed on an adult defendant was six months. The Supreme Court invalidated this disparity by holding that personal liberty was a "fundamental interest" and that, therefore, the state bore the burden of establishing that the disparity served a compelling interest, necessary to further the purpose of the challenged sentencing scheme. (*Id.,* at p. 251.) No such compelling interest was found. (*Id.,* at p. 257.)

*Olivas* has nothing to do with this case.[2] The omission of a provision analogous to section 1387 of the Penal Code from the Juvenile Court Law does not, as such, deprive a juvenile of liberty. To be sure, the refiling of a juvenile court petition under procedural circumstances similar to those which would prohibit the refiling of a criminal complaint against an adult, involves a possible loss of freedom. There is, however, a vast difference between a mere possibility of confinement—miniscule in the case of a minor charged with glue sniffing—and the stark reality of loss of freedom decreed by the statutes analysed in *Olivas.* If the mere possibility of confinement somewhere down the road involved an infringement of liberty, one cannot explain such authorities as *In re R. C.* (1974) 39 Cal.App.3d 887, 894-895 [114 Cal.Rptr. 735] or *In re T. R. S.* (1969) 1 Cal.App.3d 178, 182 [81 Cal.Rptr. 574], holding respectively, that minors are not entitled to the benefit of section 1111 of the Penal Code and that, even if the petition alleges the commission of a felony,

---

[2]We leave aside that it involved a statute which, as the court pointed out, affected "persons . . . prosecuted *as adults,* adjudged by the same standards which apply to *any competent adult* and convicted *as adults in adult courts."* (*Id.,* at pp. 242-243. Italics in original.) This distinction has been partially obliterated by the 1976 amendments to sections 726 and 731.

the juvenile court may proceed without the sifting process of a preliminary hearing or grand jury proceedings.[3]

We therefore find the strict scrutiny standard inappropriate. The question, then, becomes whether the legislative classification "rationally relates to a legitimate state purpose." (*Newland* v. *Board of Governors* (1977) 19 Cal.3d 705 [139 Cal.Rptr. 620, 566 P.2d 254].) Contending that it does not, petitioner posits the case of two persons, one a minor, the other an adult, caught sniffing glue from the same rag. They are severally brought before the appropriate tribunals when it is discovered that the police have misplaced the rag. Both cases are dismissed. The rag is found. The criminal charge against the adult cannot be refiled because of section 1387 of the Penal Code—yet here is petitioner, again before the juvenile court.

To reach a more fundamental issue, we shall pass lightly over two shaky assumptions in petitioner's hypothetical. First, that the minor and the adult would both have been charged: the thrust of the Juvenile Court Law does not justify one in assuming that if the adult is charged, the probation officer will necessarily file against the minor. (See Welf. & Inst. Code, § 625 et seq.) Second, it is by no means clear that if the juvenile court petition must be dismissed because evidence is temporarily mislaid, the proceeding against the adult will also be dropped. The Penal Code and the Juvenile Court Law exert different pressures to dismiss. Depending on whether the defendant is in custody, Penal Code section 1382, subdivision 3, gives the People 30 or 45 days after *arraignment* to bring a misdemeanor to trial. In juvenile court the corresponding time limits are much shorter—15 or 30 days after *filing*. (Welf. & Inst. Code, § 657.) Moreover, the time limits of section 1382 of the Penal Code are relatively elastic, in that they can be extended by any showing of "good cause." Extensions under the Juvenile Court Law are much more severely limited, both as to cause and length. (Welf. & Inst. Code

[3]It is worth noting that a juvenile and an adult do not start on an even footing as far as the odds in favor of eventual confinement are concerned. The latter, charged with a misdemeanor such as section 381 of the Penal Code, faces a maximum of six months in jail merely on proof that he has violated the statute. (Pen. Code, § 19.) With respect to the minor, however, such proof alone cannot even result in removal from the physical custody of his parents—let alone confinement: before the juvenile court may order any disposition involving such removal it must, in addition to the jurisdictional finding of criminal conduct, make one of the three additional findings specified in section 726 of the Welfare and Institutions Code. This statutory restriction, incidentally, applies regardless of the severity of the criminal conduct which establishes juvenile court jurisdiction. (E.g., *In re Willy L.* (1976) 56 Cal.App.3d 256, 265-266 [128 Cal.Rptr. 592]; *In re Ricardo M.* (1975) 52 Cal.App.3d 744, 749-750 [125 Cal.Rptr. 291].)

§§ 700, 700.5, 701.) In short, a temporary loss of physical evidence, which triggers the dismissal of a juvenile court matter, may not necessitate the dismissal of a parallel criminal proceeding.

The prohibition against refiling of dismissed misdemeanor charges is, at least in part, designed to pressure the prosecutor to bring the case to trial within the time limits of section 1382. Since section 657 of the Welfare and Institutions Code automatically provides far greater pressure for speedy justice, that code's omission of a prohibition against refiling seems entirely reasonable.[4]

The fact remains, however, that both the Penal Code and the Juvenile Court Law évince legislative recognition of the value of speedy justice and the reasonableness of not including in the Juvenile Court Law the prohibition against the refiling of misdemeanors should be explained on more fundamental grounds than the differences in the time limitations of section 1382 of the Penal Code and section 657 of the Welfare and Institutions Code.

That criminal and juvenile justice share a common value does not mean that every provision of the Penal Code designed to implement that value must be read into the Juvenile Court Law—and vice versa. ▇ Values cannot be viewed in isolation, but must be considered in the context of other values which the particular body of legislation declares and protects.[5] ▇ This rather obvious truth should make us hesitate before we take bits and pieces from the Penal Code and—flying the banner of equal protection—declare that there is no reasonable basis for not finding them in the Juvenile Court Law. We therefore disagree with petitioner's insistence that we should close our eyes to every part of the Penal Code except about half of one section: that part of section 1387 which prohibits the refiling of dismissed misdemeanors. Reading all of section 1387 we see primarily that it makes a distinction between felonies and misdemeanors—a distinction which pervades the criminal justice system, procedurally and substantively.

---

[4]Where does one stop in grafting parts of the Penal Code onto the Juvenile Court Law? Can we logically apply section 1387 to juveniles without also applying section 1382? In that case, assuming petitioner was not in custody, on November 3, 1976, there would have been at least 26, rather than only 11 days to bring the matter to trial. Quite possibly the matter would have been continued, rather than dismissed.

[5]"In determining the scope of the class singled out for special burdens or benefits, a court cannot confine its view to the terms of the specific statute under attack, but must judge the enactment's operation against the background of other legislative, administrative and judicial directives which govern the legal rights of similarly situated persons." (*Brown* v. *Merlo* (1973) 8 Cal.3d 855, 862 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505].)

On the other hand, the law under which petitioner is being dealt with virtually ignores all distinctions between misdemeanors and felonies. The jurisdictional predicate under section 602 of the Welfare and Institutions Code is that the minor has violated "any law of this state or of the United States or any ordinance of any city or county of this state defining crime. . . ." The procedural and substantive provisions of the Juvenile Court Law are, on the whole, precisely the same whether the law involved is a felony or a misdemeanor.[6] Nor is the seriousness of the offense, considered alone, justification for harsher treatment. (Welf. & Inst. Code, § 726; see also § 707.)

Section 1387 of the Penal Code is, as noted, an integral part of a code which draws many lines between misdemeanors and felonies. When the Penal Code draws such a line and it is claimed that it is irrational for the Juvenile Court Law not to follow suit, we must first determine the rationale for the Penal Code's differentiation between felonies and misdemeanors. Only if we can find no reasonable basis for concluding that this rationale is not equally applicable to the Juvenile Court Law, may we find a denial of equal protection.

We are fortunate that the Supreme Court has told us precisely what justifies the felony-misdemeanor dichotomy of section 1387. In *People* v. *Dawson* (1930) 210 Cal. 366, 370-371 [292 P. 267], the section was attacked as a denial of equal protection to persons accused of felonies. The court, however, pointed out that the Legislature could rationally distinguish between offenses which were "insignificant as far as [their] effect upon the body politic is concerned" and those "so heinous in character that to [their] frequent and unchecked commission might be attributed the origin of a possible statewide disaster, or eventually, the downfall of organized society." Therefore, the Legislature could properly deal differently with "comparatively trivial offenses" and those with a "more serious effect upon the morals, the safety or the welfare of the community. . . ."

Thus the distinction between felony and misdemeanor charges made by section 1387 is expressly justified in terms of protection of the public. In the case of misdemeanors, where the need for such protection is less,

---

[6]The only substantive sections of the Juvenile Court Law which differentiate between felonies and misdemeanors do so by indirection: they are the 1976 amendments to sections 726 and 731 of the Welfare and Institutions Code (see fn. 2, *ante*) prescribing maximum confinement. Sections 656.1 and 702 are procedural, apparently in aid of sections 726 and 731.

other considerations may reasonably justify giving the People only one bite at the apple.[7] This basis for differentiating between felonies and misdemeanors is, however, irrelevant to a system of justice the primary purpose of which is not protection of the public, but the "spiritual, emotional, mental, and physical welfare of the minor . . . ." (Welf. & Inst. Code, §§ 202, 502.)

*In re Gault* (1967) 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428], has made it fashionable to appear cynical about this professed goal of the juvenile justice system. Certainly, standard rhetoric about the "welfare of the minor" can no longer be used to keep due process out of the juvenile justice system. We must not, however, confuse due process with equal protection. As we said at the outset, this case involves nothing but a challenge to a legislative classification. Examining the different thrusts of the criminal law on the one hand and juvenile justice on the other, we cannot say that it was irrational for the Legislature not to have written section 1387 of the Penal Code into the Juvenile Court Law. The omission represents a legitimate legislative judgment that the goals of that law overshadow the considerations which caused it to prohibit the refiling of dismissed misdemeanors against adults.

The only juvenile court case in which the minor sought the benefit of the Penal Code's prohibition against refiling, *Neil G.* v. *Superior Court* (1973) 30 Cal.App.3d 572 [106 Cal.Rptr. 505]—though not decided on equal protection grounds—held against the minor precisely because the court thought the purposes of the Juvenile Court Law so required. These were the facts: a petition alleging two felonies was dismissed "without prejudice" because the minor's parents were not present on the date of a continued hearing. Seven days later an identical petition was filed. Unsuccessful attempts to have the second petition dismissed were followed by a writ proceeding in the Court of Appeal. That court's holding against the minor was brisk and straightforward: "We hold juvenile court petitions dismissed without a hearing, because of a time problem, may be refiled and a new proceeding commenced thereon." (*Id.,* at p. 576.)

---

[7]No authoritative listing of these considerations has been found. We assume there are several. We have already mentioned that the prohibition exerts pressure to try cases within the time limits of section 1382. There probably are also considerations of an administrative nature—cost, crowded dockets and the like. We do not deny the prophylactic effect against prosecutorial harassment. Finally, it may simply be a manifestation of the sporting theory of justice—certainly more appropriate to the purely adversary criminal justice system, than to the juvenile court.

Petitioner contends that this holding is expressly predicated on Neil G. having been charged with felonies. That is not how we read the case. While it is true that the court mentioned that the "events described in the instant juvenile court petition, if charged in the superior court as crimes, would be felonies" (*id.,* at p. 576), that statement was only made to negative any suggestion that Neil G. would be helped by the application of section 1387 of the Penal Code to juvenile court proceedings. The true rationale of the decision is, rather, that a dismissal on a technicality was incompatible with the purposes of the Juvenile Court Law as then stated in former section 502 of the Welfare and Institutions Code: " . . . to secure for each minor . . . such care and guidance, preferably in his own home, as will serve the spiritual, emotional, mental, and physical welfare of the minor and the best interests of the State; to preserve and strengthen the minor's family ties whenever possible, removing him from the custody of his parents only when his welfare or safety and protection of the public cannot be adequately safeguarded without removal; . . ." The court's ultimate conclusion was, very simply, that these purposes would not be served by conditioning the minor to the proposition that the Juvenile Court Law can be frustrated by "a minor lapse in form, . . ." (*Id.,* at p. 578.) A lapse in form does not change character with the seriousness of the charge against the juvenile.

Petitioner claims, however, that, to the extent that it is based on former section 502, the reasoning of *Neil G.* is no longer valid. He points to certain amendments to the section which, in one form or another, emphasize protection of the public from the consequences of criminal activity as an additional purpose of the Juvenile Court Law.[8]

Petitioner places too much of a burden on these amendments. The dominant purpose of the Juvenile Court Law remains the welfare of the minor. At most, the amendments reflect legislative recognition that the

---

[8] Just what version of former section 502 is presently in effect is debatable. The 1975 Legislature added a subdivision (b) which declares protection of the public from the consequences of criminal activity to be an additional purpose of the Juvenile Court Law. (Stats. 1975, ch. 819, § 1.) The 1976 Legislature reenacted the substance of section 502 as section 202 (Stats. 1976, ch. 1068, § 1.5) repealed section 502 (ch. 1068, § 14), and provided: "Any reference in any statute whether enacted in 1976 . . . or prior thereto, to any section of the Welfare and Institutions Code which was by this act repealed and reenacted with a different number shall be deemed a reference to the successor section as reenacted by this act." (Ch. 1068, § 81.) Then the 1976 Legislature amended section 502 (ch. 1071, § 4).

Since we accept that either version of the statute now expressly emphasizes protection of the public as one of the purposes of the Juvenile Court Law, we need not decide which one is in effect and what number it bears.

welfare of the minor and the protection of the public may sometimes clash and that the latter consideration must be taken "into account . . . ." (§ 202, subd. (b), § 502, subd. (b).)

Finally, the point is made that the Penal Code's prohibition against refiling prevents harassment. It probably does, in some cases. In many others it prevents refiling in the total absence of any prosecutorial desire to harass the defendant. In the record before us there is not the slightest suggestion that the petition was refiled to "hassle" petitioner. We note that a Penal Code provision expressly designed to prevent harassment—the prohibition against multiple prosecution contained in section 654—has specifically been held to apply in juvenile court. (*In re Benny G.* (1972) 24 Cal.App.3d 371, 376 [101 Cal.Rptr. 28].) It does not follow, however, that a Penal Code provision which may incidentally prevent harassment must also apply to minors who do not even claim that they are being persecuted.

We hold that petitioner's equal protection claim has no merit.

### Speedy Trial

■ Petitioner points out that the juvenile court petition was not refiled for more than a month—presumably when the mislaid evidence had been found. He claims that the delay deprived him of his constitutional right to a speedy trial.

At this point, the speedy trial claim is obviously premature. While we know the length of the delay and a little about the reason therefor, we know nothing about prejudice, if any. Further, the speedy trial point is not shown to have been presented, as such, to the juvenile court. (See *Barker* v. *Wingo* (1972) 407 U.S. 514, 530 [33 L.Ed.2d 101, 116, 92 S.Ct. 2182]; *Crockett* v. *Superior Court* (1975) 14 Cal.3d 433, 437 [121 Cal.Rptr. 457, 535 P.2d 321].)

The alternative writ heretofore issued is dismissed. The peremptory writ is denied.

Ashby, J., concurred.

**STEPHENS, J.**—I respectfully dissent. When a dismissal of a juvenile petition alleging a misdemeanor is required because of failure of the "prosecutor" to have the physical evidence necessary to establish the

charge, the dismissal should operate as a bar to refiling. The legislative dictate in Penal Code section 1387 should be as applicable to a juvenile as it is to an adult. This dictate—in part predicated upon a theory of avoidance of harassment and the right to a speedy trial—makes the principle applicable to all persons through equal protection of the law. This is merely an application of the rationale of *Olivas* (17 Cal.3d 236 [131 Cal.Rptr. 55, 551 P.2d 375]). *Neil G.* as authority should be limited to its facts, i.e., involving a felony.[1] The limiting sentence in *Neil G.* (p. 576) is: "This result follows whether we use as the controlling analogy the law relating to dismissal in civil or criminal proceedings." This statement is only true when felonies are involved, which that court recognized.

I would have the peremptory writ issue.

A petition for a rehearing was denied August 12, 1977. Stephens, J., was of the opinion that the petition should be granted. Petitioner's application for a hearing by the Supreme Court was denied September 22, 1977. Bird, C. J., Mosk, J., and Newman, J., were of the opinion that the petition should be granted.

---

[1]The problem involving the granting of a continuance is not before us; hence, it is unnecessary to discuss that aspect of the *Neil G.* opinion.