[No. F013182. Fifth Dist. May 24, 1991.]

In re NAN P., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
NAN P., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I and III.

**COUNSEL**

D. Kapp Nees, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Edgar A. Kerry and Jane A. Olmos, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**VARTABEDIAN, J.**—Are juveniles similarly situated with adults, such that a minor is denied "equal protection" because juvenile proceedings under

Welfare and Institutions Code section 602 are not protected, unlike adult proceedings, by the misdemeanor refiling prohibition of Penal Code section 1387? In the published portion of our opinion, we analyze this question and come to the conclusion that the answer is no. Appellant Nan P. additionally contends the juvenile court lacked jurisdiction due to defective notice, and the court's finding of vehicular manslaughter was not supported by sufficient evidence. These claims, too, are rejected in our unpublished discussion.

### FACTS AND PROCEEDINGS

During the afternoon of January 27, 1989, appellant, then a minor, was driving his pickup truck south on Clovis Avenue. He was accompanied by two friends, Marmorakoth S. and Soulotsa V. Appellant's friends testified that he was attempting to change lanes. He sped up to about 45 miles per hour, the car went out of control, and the accident occurred.

John Alan Repherford, an off-duty sergeant for the Fresno County Sheriff's Department, was stopped at the red light in the left-turn lane on southbound Clovis Avenue. He was waiting to turn east on Clinton Avenue. Repherford heard a vehicle "accelerating at a high rate of speed" and saw appellant's truck close to the curb of southbound Clovis Avenue. The truck then traversed the intersection of Clovis and Clinton in a southeasterly direction. The truck struck the center divider, became airborne, and landed on top of a white compact car with a female driver, later identified as Kamilla Hibbard. The white car was heading north on Clovis Avenue when it was struck. In addition to appellant's truck and the white compact car, a third car was damaged in the collision.

The unconscious Hibbard was removed from her crushed vehicle by paramedics and fire personnel. She died at the hospital later that afternoon. The coroner's report listed the cause of her death as a skull fracture with intercranial hemorrhage.

On February 8, 1989, a petition was filed against appellant alleging that he had violated Penal Code section 192, subdivision (c)(2) (vehicular manslaughter without gross negligence), a misdemeanor. On March 6, 1989, appellant demurred to the petition because there were "no underlying causes of action" (Vehicle Code violations) stated in the petition. The People asked that the petition be dismissed without prejudice. The court granted the People's motion.

A new petition was filed on May 9, 1989, again alleging a violation of Penal Code section 192, subdivision (c)(2). This petition alleged in addi-

tional counts that appellant committed an unsafe lane change (Veh. Code, § 21658, subd. (a)) and was speeding (Veh. Code, § 22350). That same date, a notice of hearing scheduled for May 22, 1989, was mailed to appellant and his parents.

A first amended petition, filed May 17, 1989, added language to the manslaughter count that the killing occurred while appellant drove in violation of the previously stated Vehicle Code sections. Appellant and his parents appeared before the court on May 22, 1989, at which time the matter was continued because of the unavailability of appellant's attorney. After another continuance for the same reason, appellant was arraigned on June 1, 1989.

At the June 29, 1989, trial confirmation hearing, a motion for dismissal was filed by appellant alleging violation of his right to a speedy trial, a violation of equal protection, and prejudice based on the destruction of evidence. This motion was heard on July 19, 1989. The thrust of appellant's argument was that after the initial dismissal was filed, his truck was destroyed. He contended that his reliance on the dismissal now prejudiced him since evidence was destroyed. At this hearing, there was some discussion between the court and the attorneys regarding whether a misdemeanor juvenile petition could be refiled after dismissal. The hearing was continued until July 31, 1989. On July 31, evidence was taken, no further mention was made of the refiling issue, and the motion for dismissal was denied.

At the close of the jurisdictional hearing, the first amended petition was found true. At the dispositional hearing, appellant was placed on probation for one year. As a condition of probation, he was ordered committed to the Ashjian Treatment Center for 45 days; 30 days were stayed and the remaining 15 days were to be served in the community service work program in lieu of custody time.

## DISCUSSION

I. *Did the service of the petition comply with Welfare and Institutions Code section 660, subdivision (c) ?**

. . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 751.

II. *Was the refiling of the misdemeanor petition a denial of equal protection of the law?*

If a misdemeanor complaint filed against an adult is dismissed, Penal Code section 1387 prevents the refiling of that complaint absent certain circumstances not present here.

 Appellant contends that because the refiling of a misdemeanor complaint is prohibited in cases involving adults, a refiling here denies him equal protection of the law. Appellant asserts that his equal protection argument must be analyzed by applying the strict scrutiny test because a liberty interest is involved.

In *Alex T. v. Superior Court* (1977) 72 Cal.App.3d 24 [140 Cal.Rptr. 17], a misdemeanor petition was filed in juvenile court against Alex T. It was dismissed without prejudice, and an identical petition was filed the next month. Prior to an adjudication of the petition, a mandamus proceeding was brought in the appellate court. Alex T. claimed that he was denied equal protection because Penal Code section 1387 prevents the refiling of a dismissed misdemeanor charge in adult cases. (*Alex T., supra,* at p. 27.) The appellate court began its analysis by noting the right involved was not a due process right. (*Ibid.*) The first question the court determined was whether the equal protection argument should be judged by the strict scrutiny or rational basis test. (*Id.* at p. 28.) The court determined the rational basis test applied because the refiling involved only a possible loss of freedom and therefore did not infringe on the fundamental right of personal liberty. (*Id.* at pp. 28-29.) The court determined that there was no equal protection violation. It found the purpose of Penal Code section 1387 was to give the People only "one bite at the apple" where the crime was less serious, causing a somewhat insignificant impact upon the general public. (*Alex T., supra,* at pp. 31-32.) Such a differentiation between felonies and misdemeanors was irrelevant to the juvenile justice system's purpose, "which is not protection of the public, but the 'spiritual, emotional, mental, and physical welfare of the minor . . . .' " (*Id.* at p. 32.)

Appellant here contends that this case is more akin to *People v. Olivas* (1976) 17 Cal.3d 236 [131 Cal.Rptr. 55, 551 P.2d 375] than to *Alex T., supra,* because here the deprivation of liberty was not a possibility but a reality, the court having taken custody from appellant's parents, committed him to Ashjian Treatment Center and placed him on formal probation. However, reliance on Olivas is misplaced because, as we discuss below, the court there compared only the differences between two groups of adults.

In *People v. Olivas, supra,* 17 Cal.3d 236, the 19-year-old defendant was committed to the California Youth Authority following his conviction of a

misdemeanor assault. (*Id.* at p. 239.) The term imposed was potentially longer than the maximum term which might have been imposed for a person over the age of 21 years. (*Ibid.*) The section which authorized the defendant's commitment to the California Youth Authority applied only to adults under the age of 21 or youths 16 to 18 years old who were prosecuted as adults. Defendant challenged the length of his commitment on equal protection grounds. The appellate court first found that the statute classified "an identifiable group of individuals into smaller groupings only one of which may be subject to commitment to the Youth Authority." (*Id.* at p. 243.) The Supreme Court specifically noted that it was not dealing with a juvenile versus adult situation but an adult versus adult situation. The court expressly declined to express an opinion on the merits of an argument dealing with juvenile versus adult. (*Ibid.*, fn. 11.) The defendant did not challenge the classification as suspect but challenged it based on a fundamental interest analysis. The court found the interest at stake was that of personal liberty and such an interest is a fundamental interest subject to strict scrutiny. (*Id.* at pp. 250-251.) The People failed to show that the classification was based on a compelling interest. (*Id.* at pp. 243, 251-257.)

A threshold flaw in appellant's argument here is a failure to show "the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." (*In re Eric J.* (1979) 25 Cal.3d 522, 530 [159 Cal.Rptr. 317, 601 P.2d 549].) Relying on *In re Eric J.*, the People correctly argue that this showing is "[t]he first prerequisite to a meritorious claim under the equal protection clause." (*Ibid.*) Perhaps because this prerequisite was not discussed by the parties before it, the *Alex T.* court jumped into an equal protection analysis without first determining whether adults and juveniles were similarly situated with respect to the purposes of the law. While the *Alex T.* court soundly and persuasively discussed the differences between adult and juvenile proceedings, the discussion was not focused on the critical preliminary requirement of similar situation. " 'The concept of the equal protection of the laws compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment.' " (*Gray* v. *Whitmore* (1971) 17 Cal.App.3d 1, 21 [94 Cal.Rptr. 904].)

Juveniles and adults are not similarly situated with respect to the statute here in question. In *People* v. *Dawson* (1930) 210 Cal. 366 [292 P. 267], the defendant challenged Penal Code section 1387 on equal protection grounds because it treated those charged with felonies and those charged with misdemeanors differently. The court explained the purpose of the statute as a recognition by the Legislature that felonies are very serious and pose a threat to the "body politic." Such serious types of offenses should not go "unchecked." (*Dawson, supra,* at p. 370.) Penal Code section 1387 "is expressly

justified in terms of protection of the public." (*Alex T.* v. *Superior Court, supra,* 72 Cal.App.3d 24, 31.)

Although one of the purposes of the juvenile justice system is protection of the public (Welf. & Inst. Code, § 202), this purpose tends to be subsumed within a system whose principal objectives differ from the adult system. The main distinctions in the juvenile justice system were explained in *In re Eric J., supra,* 25 Cal.3d 522, 530:

"[T]he most significant difference between minors and adults is that '[t]he liberty interest of a minor is qualitatively different than that of an adult, being subject both to reasonable regulation by the state to an extent not permissible with adults [citations], and to an even greater extent to the control of the minor's parents unless "it appears that the parental decisions will jeopardize the health or safety of the child or have a potential for significant social burdens." [Citation.]' [Citation.] When the minor must be removed from the custody of his parents for his own welfare or for the safety and protection of the public [citation], the state assuming the parents' role, the state also assumes the parents' authority to limit the minor's freedom of action." The penal philosophy for adults is one of punishment. The philosophy for juveniles is one of rehabilitation. (25 Cal.3d at pp. 531-532.)

The changes in the juvenile justice system placing an increased emphasis on punishment have not made the differences of the two systems disappear.

"[T]he reference to punishment in the amended [Welfare and Institutions Code] section 202 reinforces the distinction between the purposes underlying the juvenile and adult procedures. The amended statute recites in relevant part: 'Minors under the jurisdiction of the juvenile court as a consequence of delinquent conduct shall, in conformity with the interests of public safety and protection, receive *care, treatment and guidance which is consistent with their best interest*, which holds them accountable for their behavior, and which is appropriate for their circumstances. *This guidance may include punishment that is consistent with the rehabilitative aspects of this chapter.*' (§ 202, subd. (b), italics added.)

"In sum, the state's punishment of minors is a means to an end, or a 'rehabilitative tool' [citation], while the criminal justice system for adults has a purely punitive component separate from its rehabilitative goals. The adult system distinguishes between misdemeanors and felonies not only by way of punishment, but also by procedural process. [Citations.] As Justice Kaus said in *In re Isaac G.* (1979) 93 Cal.App.3d 917 . . . in response to a minor's equal protection challenge to his period of confinement, 'surely the

different purposes of the adult Determinate Sentencing Act and of the indeterminate juvenile procedure prohibit the facile equal protection analysis for which appellant contends.' [Citation.]" (*In re Samuel V.* (1990) 225 Cal.App.3d 511, 517 [277 Cal.Rptr. 14], fn. omitted.)

The state's primary purpose in bringing juveniles who violate the criminal law into the juvenile court system is rehabilitation; with adults it is punishment. Penal Code section 1387 recognizes a dichotomy in adult cases between felonies and misdemeanors; the fact misdemeanors are generally less serious crimes, carrying less potential punishment, warrants the statutory policy of terminating such actions upon a single dismissal in adult cases. Since the primary purpose of the juvenile system is to rehabilitate a youthful offender, juvenile "misdemeanors" tend to follow the same procedure as juvenile "felonies." The focus is to find an effective rehabilitative means to modify the juvenile's behavior as soon as that behavior comes to the attention of the system. The state has a strong interest "in monitoring juvenile conduct in order to 'nip budding character defects before they blossom into adult criminal behavior.'" (*In re Samuel V., supra,* 225 Cal.App.3d 511, 517.)

Thus, the situations of juveniles and adults are very different with regard to Penal Code section 1387. " 'So long as the statute does not permit one to exercise the privilege while refusing it to another of like qualifications, under like conditions and circumstances, it is unobjectionable upon [equal protection grounds].'" (*Sutter Basin Corp.* v. *Brown* (1953) 40 Cal.2d 235, 247 [253 P.2d 649].) Having determined the two groups in question here are not similarly situated, we need analyze no further.

We note, in passing, that even though an equal protection challenge is defeated based on the differences inherent in the two systems, juveniles are entitled to the essentials of due process. (*In re Gault* (1967) 387 U.S. 1, 13-31 [18 L.Ed.2d 527, 538-548, 87 S.Ct. 1428].) Appellant makes no contention, nor does there appear to be any basis to argue, that his due process rights have been violated here.

III. *Was there sufficient evidence to prove appellant committed involuntary manslaughter?**

. . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante,* page 751.

## DISPOSITION

The judgment is affirmed.

Martin, Acting P. J., and Thaxter, J., concurred.