123 Cal.Rptr.2d 245 (2002)
100 Cal.App.4th 1006
Michael Lehman BURRIS, Petitioner,
v.
The SUPERIOR COURT of Orange County, Respondent,
The People, Real Party in Interest.
No. G028636.
Court of Appeal, Fourth District, Division Three.
August 1, 2002.
Review Granted October 16, 2002.
*246 Law Offices of Martin G. Stapleton, Jr., and Martin G. Stapleton, Jr., Tustin, for Petitioner.
Carl C. Holmes, Public Defender (Orange County), Deborah A. Kwast, Chief Deputy Public Defender, Kevin Phillips and Lee Blumen, Deputy Public Defenders, as Amici Curiae, upon the request of the Court of Appeal.
Michael P. Judge, Public Defender (Los Angeles), and John Hamilton Scott, Deputy Public Defender, as Amici Curiae, upon the request of the Court of Appeal.
No appearance for Respondent.
Tony Rackauckas, District Attorney, and Brian N. Gurwitz, Deputy District Attorney, for Real Party in Interest.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Patti W. Ranger and Lise Jacobson, Deputy Attorneys General, as Amici Curiae, upon the request of the Court of Appeal.

OPINION
ARONSON, J.
Veteran prosecutors for years have counseled their inexperienced colleagues to proceed with care when attempting to supplant a pending misdemeanor complaint with a new felony charge. They warned that premature dismissal of the misdemeanor before a new felony charge was filed would bar any further prosecution under Penal Code section 1387.[1] We consider in this writ petition whether this commonly held belief is accurate. It is not.

I
Petitioner Michael Burris was charged with a misdemeanor count of driving under the influence of alcohol (DUI) with a blood alcohol level of at least 0.08 percent. Two prior DUI convictions also were alleged. Before trial, the deputy district attorney discovered a third DUI prior. Under Vehicle Code section 23550, subdivision (a), a defendant's DUI charge may be elevated to a felony if it occurred within seven years of three earlier DUI convictions. Or it may be pursued as a misdemeanor, at the prosecutor's election. (See Veh.Code, § 23550; see also § 17, subd. (b)(4).) The deputy decided to refile Burris's case as a felony.
He informed petitioner's counsel of his decision, prepared a felony complaint, and directed the clerical staff to file it. Believing his directions had been followed, the prosecutor moved to dismiss the misdemeanor. The court granted the motion. (The statutory grounds were not specified, but real party in interest concedes the court acted under section 1385.) As it turned out, the felony complaint was filed 90 minutes after the court dismissed the misdemeanor.
Relying on section 1387, Burris moved to dismiss the felony complaint. The trial court denied the motion, and Burris filed this writ petition. We granted an order to show cause to consider whether section 1387 bars a subsequent felony prosecution if the identical criminal act was originally charged as a misdemeanor and was previously dismissed by the court.[2]

II
We begin by examining the applicable language in section 1387, subdivision (a): *247 "An order terminating an action pursuant to this chapter, or Section 859b, 861, 871, or 995, is a bar to any other prosecution for the same offense if it is a felony or if it is a misdemeanor charged together with a felony and the action has been previously terminated pursuant to this chapter, or Section 859b, 861, 871, or 995, or if it is a misdemeanor not charged together with a felony, except...." (The listed exceptions are irrelevant for present purposes.) Admittedly, the statute is not a model of clarity.
The question presented by this writ is: What does the word "it" refer to in the foregoing excerpt? Again, the statute states: "An order terminating an action pursuant to this chapter, or Section 859b, 861, 871, or 995, is a bar to any other prosecution for the same offense ... if it is a misdemeanor...." (Italics added.) Conversely, prosecution after an initial dismissal is allowed "if it is a felony...." (Italics added.) Does the word "it" refer to the misdemeanor-felony nature of the dismissed charge? Or does "it" instead refer to the misdemeanor-felony nature of a subsequently filed charge? If the former, then further prosecution of petitioner is foreclosed because a misdemeanor charge against him has already been dismissed. If the latter, then the current prosecution may proceed because the subsequently filed charge is a felony.
At least one California appellate decision supports petitioner's position. In People v. Nelson (1964) 228 Cal.App.2d 135, 39 Cal. Rptr. 238 (Nelson), an appellate panel declared: "The words `if it is a misdemeanor' refer to the complaint which was dismissed, not to the new complaint which was filed." (Id at p. 137, 39 Cal.Rptr. 238.) The Idaho Court of Appeals, without extended analysis, reached the same conclusion regarding its own similarly-worded dismissal statute: "Idaho Code § 19-3506, by its express terms, bars subsequent prosecution only if the charge dismissed is a misdemeanor." (State v. Hinostroza (Idaho Ct.App.1988) 114 Idaho 621, 759 P.2d 912, 914, italics added (Hinostroza).)[3]
In contrast, the Utah Supreme Court reached the opposite conclusion regarding the plain meaning of its dismissal statute, which before repeal was virtually identical to Idaho Code section 19-3506 and to the relevant language in our Penal Code section 1387. In State v. Romero (1961) 12 Utah 2d 210, 364 P.2d 828 (Romero), the defendant was initially charged with a misdemeanor following a drunk driving accident. (Id at p. 829.) After the preliminary hearing the misdemeanor was dismissed and he was subsequently charged, tried, and convicted for "automobile homicide," a felony. (Ibid.) On appeal, the defendant urged "dismissal of the lesser misdemeanor barred any prosecution under the greater felony charge, which contention," the court summarily said, "we *248 reject, interpreting [the dismissal statute] as meaning just the opposite...." (Ibid.)[4]
Similar to the result in Romero, a California appellate panel in Necochea v. Superior Court (1972) 23 Cal.App.3d 1012, 100 Cal.Rptr. 693 (Necochea) held that dismissal of a complaint alleging misdemeanor forgery and utterance violations did not bar a new complaint alleging the offenses as felonies. Necochea did not quote or parse the language of section 1387. But it appears that in Necochea, just as in Romero, the two courts necessarily read their states' respective dismissal statutes to mean that "it" referred to subsequently filed charges. Applying that interpretation to section 1387, the statute reads: "An order terminating an action pursuant to this chapter, or Section 859b, 861, 871, or 995, is a bar to any other prosecution for the same offense ... if it [the subsequently filed charge] is a misdemeanor...." As Necochea put it, "the dismissal of a misdemeanor proceeding cannot be followed by yet another misdemeanor complaint and when such a dismissal is entered ... the offender either goes free or to a preliminary hearing upon a felony complaint." (Necochea v. People, supra, 23 Cal.App.3d at p. 1016, 100 Cal.Rptr. 693.)
Given the divergent interpretations of the word "it" in Necochea and Romero on one hand and Nelson and Hinostroza on the other, we turn for assistance to a venerable canon of statutory construction. "Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation. [Citation.]" (Dyna-Med, Inc. v. Fair Employment & Housing Com. (1987) 43 Cal.3d 1379, 1387, 241 Cal.Rptr. 67, 743 P.2d 1323.) Doing so can be helpful in ascertaining the Legislature's intent, which is the object of our inquiry. (See People v. *249 Trevino (2001) 26 Cal.4th 237, 240-241, 109 Cal.Rptr.2d 567, 27 P.3d 283 ["Our task `is to ascertain and effectuate legislative intent'"].) Our analysis of consequences shows that section 1387, as currently drafted, gores both prosecutors' and defendants' oxen at the same time, no matter which way the pronoun "it" is read.
Petitioner's interpretation, that the word "it" refers to the previously dismissed charge, means that if the dismissed charge was a misdemeanor then discovery of priors or any other evidence making the offense a felony is always of no consequence, because no further charges may be filed. Here, for example, the felony charge (as well as a reinstituted misdemeanor charge) against petitioner would be precluded because the previously dismissed charge was a misdemeanor. This could not have been the Legislature's intent given that section 1387 includes an express exception, in subdivision (a)(1), that allows a third (or further) successive prosecution for felonies where "subsequent to the dismissal ... new evidence has been discovered by the prosecution which would not have been known through the exercise of due diligence at, or prior to, the time of the termination of the action." Petitioner claims this exception is simply inapplicable where the prosecutor has elected, or been forced by the existing evidence, to proceed initially on a misdemeanor charge, as here. That interpretation may benefit petitioner in this case, but it might well operate to the detriment of a larger class of defendants. The Attorney General cautions petitioner's interpretation might encourage prosecutors to "overcharge" as felonies wobblers they might otherwise pursue as misdemeanors, to avoid the specter of a prior surfacing after a dismissal. The inability to use such priors might chill the discretion section 17, subdivision (b)(4) ostensibly affords prosecutors to extend lenient treatment.
On the other hand, the district attorney's interpretation that the word "it" refers to subsequently filed charges also has negative consequences for both prosecutors and defendants. If mitigating evidence surfaces after a prosecutor starts with felony charges and suffers a routine dismissal along the way, the charges could not be reduced because the earlier dismissal would be "a bar to any other prosecution for the same offense ... if it [the subsequent charge] is a misdemeanor..." The prosecutor is left with this choice: to continue pursuit of felony charges against a defendant who deserves misdemeanor treatment or, alternatively, let the defendant go free without any punishment whatsoever. The latter alternative is still entirely consistent with the Legislature's evident judgment in section 1387 that: (1) scarce prosecutorial resources should not be expended in multiple attempts to punish mere misdemeanor conduct; and (2) a mere misdemeanant should not be discomfited by serialized prosecution. (See Necochea v. People, supra, 23 Cal.App.3d at p. 1016, 100 Cal.Rptr. 693 [noting "clear policy of the law favoring an expeditious resolution of misdemeanor charges"]; see also Alex T. v. Superior Court (1977) 72 Cal. App.3d 24, 31-32, 140 Cal.Rptr. 17 ["In the case of misdemeanors, where the need for such protection is less, other considerations may reasonably justify giving the People only one bite at the apple"]; cf. Apprendi v. New Jersey (2000) 530 U.S. 466, 480, fn. 7, 120 S.Ct. 2348, 147 L.Ed.2d 435 [characterizing misdemeanors as "those `smaller faults and omissions of less consequence'"].) On balance, then, the consequences flowing from the different interpretations of the word "it" favor the district attorney's positioneven if the defendant goes free when a felony is downgraded to a misdemeanor after a dismissal.
*250 But we cannot say petitioner's interpretation is unreasonable. It is not. We tend to agree with the candid assessment by amicus Los Angeles Public Defender (LAPD) that the two "plain meaning" readings of the word "it"referring either to the previously dismissed charge or to the subsequently filed oneare both reasonable. Thus, examining the consequences of the parties' differing interpretations does not resolve the ambiguity.[5]
We believe the puzzle posed by the word "it" in section 1387 was answered long ago by our Supreme Court in People v. Smith (1904) 143 Cal. 597, 77 P. 449, a case not cited by either Necochea or Nelson (nor Hinostroza or Romero, for that matter).
Necochea relied on People v. Combes (1961) 56 Cal.2d 135, 14 Cal.Rptr. 4, 363 P.2d 4 (Combes) and People v. Mitman (1954) 122 Cal.App.2d 490, 265 P.2d 105 (Mitman) for the proposition that "It is settled that the dismissal of a misdemeanor complaint filed in municipal court does not bar a second prosecution for felony by indictment or information." (Necochea v. People, supra, 23 Cal.App.3d at p. 1015, 100 Cal.Rptr. 693.) But Combes involved capital murder, a felony, and not an initial misdemeanor charge. (People v. Combes, supra, 56 Cal.2d at pp. 139, 145, 14 Cal. Rptr. 4, 363 P.2d 4 ["dismissal of ... a felony is not a bar to another prosecution for the same offense"].) As such, Combes was shaky authority for the felony upgrade in Necochea, in turn making Necochea itself questionable precedent for the upgrade in this case. Nor did Mitman involve the upgrade approved in Necochea, but rather a subsequent charge for a different offense altogether. (See People v. Mitman, supra, 122 Cal.App.2d at p. 494, 265 P.2d 105 ["section 1387 ... does not forbid prosecution for a different offense," italics added].) In spite of these faults, however, Necochea was undoubtedly correctly decided, given that Smith reached the same result on the same facts (i.e., allowing felony prosecution after a misdemeanor dismissal). Nelson, in contrast, reached the opposite conclusion as Smith. We must therefore part company with Nelson, as Smith controls.
In Smith, the defendant was initially charged "in the justice court" on a count of petit larceny. (People v. Smith, supra, 143 Cal. at p. 598, 77 P. 449.) The offense was "a misdemeanor of which the justice's court has jurisdiction." (Id. at p. 599, 77 P. 449.) The prosecutor subsequently discovered that Smith "had before been convicted of the crime of burglary...." (Ibid.) "The punishment for petit larceny committed by one who has before been convicted of burglary is imprisonment in the state prison ...," a felony. (Ibid.) The prosecutor moved to dismiss the misdemeanor complaint and file a new complaint in superior court charging a felony. Smith objected on unknown grounds, but those objections were overruled, as recorded in the justice court's judgment of dismissal: *251 "`Objections overruled. Complaint herein dismissed, and defendant discharged.'" (Id. at p. 598, 77 P. 449.) The new felony complaint was filed in superior court, Smith was convicted, and he appealed. As phrased by the Supreme Court, the question presented by the appeal was "whether or not the judgment of dismissal in the justice court amounts to a bar or acquittal of the same offense in the superior court." (Id. at p. 598, 77 P. 449.)
The Supreme Court held that "the judgment of dismissal was not a bar ..." to subsequent felony prosecution. (People v. Smith, supra, 143 Cal. at p. 598, 77 P. 449.) The court recited the language of section 1387 as it then provided: "`[A]n order for the dismissal of the action as provided in this chapter is a bar to any other prosecution for the same offense, if it is a misdemeanor; but it is not a bar if the offense is a felony.'" (Id. at p. 599, 77 P. 449, italics added.) The Supreme Court concluded, "This case comes within the terms of the section last cited," i.e., within the terms of the clause, "`it is not a bar if the offense is a felony.'" (Ibid.) The court added, speaking to the Legislature's intent for a misdemeanor prosecution such as the one before it, "It was never intended that the dismissal should be a bar to a prosecution for a felony." (Ibid.)
Smith authorized precisely what real party seeks to do here, namely, upgrade a dismissed misdemeanor to a felony charge. The result in Smith compels the conclusion that the Supreme Court understood the Legislature to have intended the word "it" in section 1387 to refer to the subsequently filed charge. In other words, Smith necessarily read former section 1387 in this fashion: "`an order for the dismissal of the action as provided in this chapter is a bar to any other prosecution for the same offense, if it [the subsequent charge] is a misdemeanor; but it is not a bar if the [subsequently charged] offense is a felony.'" (People v. Smith, supra, 143 Cal. at p. 599, 77 P. 449.) Because the applicable statutory language remains the same, our reading should not diverge from the Supreme Court's interpretation in Smith. Indeed, in light of Smith, one early California appellate panel called section 1387 "perfectly clear." (People v. Brown (1919) 42 Cal.App. 462, 464-465, 183 P. 829 [following Smith in allowing a felony assault charge after dismissal of a misdemeanor battery charge]; see also Learning v. Municipal Court (1974) 12 Cal.3d 813, 818, fn. 3, 117 Cal.Rptr. 657, 528 P.2d 745 [summarily stating, without citing Smith: "Dismissal of a misdemeanor complaint does not bar a felony prosecution"].)
Amicus LAPD valiantly attempts to distinguish Smith. The effort fails. LAPD points to the 1970 enactment date of section 17, subdivision (b)(4) to show the Supreme Court in Smith did not contemplate the felony upgrade in the circumstances presented here, since wobblers did not exist in 1904. In amicus curiae's words, "Smith did not speak to the situation, which only existed after Smith was decided, in which conduct could be charged as either a felony or a misdemeanor." But the wobbler statute makes no difference to our understanding of Smith. By both its result and its reference to what was "intended" in section 1387, Smith simply had to have read the word "it" to refer to subsequently filed charges.
LAPD's position would require that the Legislature, in passing section 17, subdivision (b)(4), intended thereby to modify the word "it" in a completely different section, section 1387, so that it would have exactly the opposite meaning Smith divined. We see it differently. "[A]n implied amendment or repeal of a code section is generally disfavored." (People v. Wood (1998) 62 Cal.App.4th 1262, 1270, 73 *252 Cal.Rptr.2d 308.) The Legislature is presumed, when enacting a statute, to have been aware of related code sections and to have intended to maintain a consistent body of rules. (Ibid.) The Legislature is also presumed to be aware of judicial interpretations of a statute. "`When a statute has been construed by the courts, and the Legislature thereafter reenacts that statute without changing the interpretation put on that statute by the courts, the Legislature is presumed to have been aware of, and acquiesced in, the courts' construction of that statute.' [Citation.]" (People v. Ledesma (1997) 16 Cal.4th 90, 100-101, 65 Cal.Rptr.2d 610, 939 P.2d 1310.) The Legislature has amended section 1387 many times since Smith and since the enactment of section 17, subdivision (b), but with each amendment the Legislature left untouched the language interpreted by Smith. Smith therefore continues to be both viable and controlling as to the interpretation of the word "it" in section 1387, subdivision (a).
Smith's interpretation is consistent with the policy considerations articulated in cases reaching the same result without citing it. For example, Necochea observed that, compared to a misdemeanor violation, "[i]f the offense is potentially a felony, society has a much greater interest in its punishment...." (Necochea v. People, supra, 23 Cal.App.3d at p. 1016, fn. 4, 100 Cal.Rptr. 693.) Citing Necochea for its conclusion that a felony prosecution is permitted after a misdemeanor dismissal, the court in Malone v. Superior Court, supra, 47 Cal.App.3d at p. 317, 120 Cal.Rptr. 851 observed: "Often the district attorney doesn't have enough information to make a firm election before filing the complaint or in the prosecution's early stage. New knowledge may reveal that mitigation of the charge was a regrettable choice." Malone thus concluded an initial misdemeanor election under section 17 "is not conclusive," seeing in section 1387 "a design to endow the prosecutor with flexibility." (Ibid.) Such a design rationally distinguishes between "`comparatively trivial offenses' and those with a `more serious effect upon the morals, the safety or the welfare of the community.'" (Alex T. v. Superior Court, supra, 72 Cal.App.3d at p. 31, 140 Cal.Rptr. 17.) Finally we return to our veteran prosecutor and his or her advice to deputies to supplant misdemeanor charges rather than dismiss them.[6] Here, while the deputy intended to supplant one complaint with another, in actuality a new felony complaint followed a misdemeanor dismissal. Such a procedure is not barred by section 1387, as our discussion of Smith shows. Our holding, in sum, is simply that People v. Smith (1904) 143 Cal. 597, 77 P. 449 is fully applicable to the facts of this case and is as binding today as when it was first decided nearly a century ago. Because Smith is controlling precedent, we disagree with the interpretation of the word "it" announced in People v. Nelson, supra, 228 Cal.App.2d at p. 137, 39 Cal. Rptr. 238.

*253 III
The alternative writ of prohibition is discharged, and the request for a peremptory writ is denied. The previously imposed stay is lifted upon this opinion becoming final.
WE CONCUR: BEDSWORTH, Acting P.J., and O'LEARY, J.
NOTES
[1] All further statutory references are to the Penal Code unless otherwise specified.
[2] The parties and amici all agree the identical criminal act, driving under the influence, underlies both the initial misdemeanor charge and the subsequent felony charge against Burris. The charges have the same elements (compare Veh.Code, § 23546 with Veh.Code, § 23550) and are therefore the "same offense" for purposes of our analysis under section 1387. (See Dunn v. Superior Court (1984) 159 Cal.App.3d 1110, 1118, 206 Cal. Rptr. 242 [applying "same elements" test to determine whether a new charge is, for purposes of section 1387, the "same offense" as a previously dismissed one]; see also People v. Weathington (1991) 231 Cal.App.3d 69, 90, 282 Cal.Rptr. 170 [prior offender status is not an element of crime of driving under the influence with three or more priors, but rather, is an enhancement].) Hence, we cannot resolve this case by saying that the misdemeanor and felony complaints do not charge the "same offense" within the meaning of section 1387.
[3] Idaho Code section 19-3506 reads: "An order for the dismissal of the action, as provided by this chapter, is a bar to any other prosecution for the same offense, if it is a misdemeanor; but it is not a bar if the offense is a felony."
[4] Former Utah Code section 77-51-6 read: "An order for the dismissal of an action as provided in this chapter shall be a bar to any other prosecution for the same offense, if it is a misdemeanor; but shall not be a bar, if the offense is a felony." (See State v. Romero, supra, 364 P.2d at p. 829, fn. 4.)

Besides Utah, at least three other states that once had dismissal statutes and rules similar to section 1387 have since abandoned them. (Compare former Rule 238, Ariz. Rules of Crim. Proc. [dismissal-bar provision] with 16A Ariz.Rev.Stat. Ann., Rules of Crim. Proc., Rule 16.6, subd. d (1998) [dismissal is "without prejudice to commencement of another prosecution"; and further noting former Rule 238 "was adopted in part" from California's section 1387]. See also Montana Code Annotated, section 46-13-201(3) [reenacted as section 46-13-401(3) (1991), without dismissal-bar provision]; People v. Krum (N.Y.City Crim.Ct.1972) 68 Misc.2d 763, 328 N.Y.S.2d 167, 167 [noting dismissal provision in "the old Code of Criminal Procedure Sec. 673" but that "[i]n compiling the new Criminal Procedure Law this section was not perpetuated"].)
We can only speculate at the reasons for this apparent trend away from such bar statutes, but one of our own courts has held that "the rule against multiple prosecution has no fundamental or constitutional roots; it is but `a procedural safeguard against harassment.' [Citations]." (In re Troglin (1975) 51 Cal. App.3d 434, 439, 124 Cal.Rptr. 234.) Procedural safeguards are an important bulwark of due process (see, e.g., Dickerson v. United States (2000) 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405 [reaffirming necessity of Miranda warnings, over dissent]), but they can be unwieldy shields, as difficult to cast as to interpret. Perhaps that is why some jurisdictions are apparently choosing to rely not on prophylactic measures but rather direct attacks against the evils that dismissal statutes guard against, e.g., prosecutorial forum shopping (People v. Carreon (1997) 59 Cal.App.4th 804, 808, 69 Cal.Rptr.2d 438); harassment of defendants (People v. Superior Court (Martinez), supra, 19 Cal.App.4th at p. 744, 23 Cal.Rptr.2d 733); and denial of the defendant's speedy trial right (Paredes v. Superior Court (1999) 77 Cal.App.4th 24, 28-29, 91 Cal.Rptr.2d 350). (Cf. Vizcarra v. Municipal Court (1972) 27 Cal.App.3d 916, 921, fn. 5, 104 Cal.Rptr. 177 [suggesting writ of prohibition available to bar intentional harassment by successive prosecution].)
[5] Real party in interest urges that another canon of statutory construction, the "last antecedent rule," resolves the ambiguity of section 1387. (See White v. County of Sacramento (1982) 31 Cal.3d 676, 680, 183 Cal.Rptr, 520, 646 P.2d 191 ["qualifying words, phrases and clauses are to be applied to the words or phrases immediately preceding [them] and are not to be construed as extending to or including others more remote"].) But the last possible antecedent for "it" in section 1387 is "offense," which is problematic because the "offense" punished in Vehicle Code section 23550 is a wobbler, i.e., as much a misdemeanor as a felony. Thus, substituting "offense" for "it" is no resolution at all: does "offense" refer to the previously dismissed offense (a misdemeanor in this case, prohibiting reprosecution) or to the subsequently filed one (a felony, allowing reprosecution)? We prefer to ground our conclusion on firmer footing than the last antecedent rule.
[6] Amicus curiae LAPD forcefully urges that any so-called "supplanting" procedure runs afoul of section 1387. If the prosecutor can avoid a section 1387 strike for "terminating an action" simply by amending a complaint with a new charge before dismissing the old charge, section 1387 is wholly vitiated. The prosecutor, amicus LAPD warns, could simply supplant complaint after complaint, ad infinitum. Real party, on the other hand, points to language in Muns v. Superior Court (1955) 137 Cal.App.2d 728, 731, 290 P.2d 951, that suggests amending a complaint and dismissing the original pleading "could not effect the dismissal of the action" within the meaning of section 1387. (But see People v. Aiken (1951) 108 Cal.App.2d 343, 345, 238 P.2d 1019 [reaching contrary conclusion where intention to amend original pleading was not expressed].) The issue appears both interesting and close, but will have to await resolution another day.