[No. H007551. Sixth Dist. June 11, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID LIVINGSTON WEATHINGTON, Defendant and Appellant.

70

72

## COUNSEL

Michael B. McPartland, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Stan M. Helfman and John T. Murphy, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PREMO, Acting P. J.**—Defendant David Livingston Weathington appeals from conviction at jury trial of one count each of felony driving under the influence of alcohol with three or more priors for which he received a prison sentence, and misdemeanor driving on a suspended license. He claims that the court erred in instructing the jury and in refusing to bifurcate the trial of the priors. We agree with the latter contention, and therefore vacate the sentence. However, we affirm the judgment of conviction.

### FACTS

On April 14, 1990, appellant drove into a gas station and pulled up at the full-service bay to buy gas. He exited his car and asked the attendant, Richard Gill, to fill the gas tank and check the oil. Gill noticed a fuel line leak, so appellant moved the car away from the gas pumps to be fixed. Exiting again, appellant confided to the cashier, Chris Olsen, that he had drunk a six-pack and felt good, and inquired where he could find a liquor store. Both employees thought appellant was intoxicated: he had slurred speech and staggered when he walked.

There was a liquor store across the street; appellant went there and returned from five to ten minutes later with a wine cooler for himself and

sodas for the attendants. He got into the driver's seat of the car and started drinking the cooler.

The cashier called the police, who arrived about 30 minutes later. They administered field sobriety tests and arrested appellant. Appellant admitted to consuming four beers between 9:30 a.m. and noon, the wine cooler, and complained of a bad knee when he was unable to do the balance test. A blood sample was taken; the blood-alcohol level was .25 percent.

Appellant was charged with driving under the influence of alcohol with three or more priors (Veh. Code, §§ 23152, subd. (a), 23175)[1] and driving with a suspended or revoked license (§ 14601.2, subd. (a)). The district attorney also alleged that appellant had prior convictions for driving with a suspended or revoked license (§ 14601.2, subd. (d)(2)).

Before trial commenced, appellant made a motion *in limine* "for the bifurcation of the trial as to the priors and concurrently for the sanitation of the complaint not to mention anything about his prior convictions." When the motions were denied, appellant admitted seven prior convictions of driving under the influence of alcohol (§ 23152, subds. (a), (b)) and six prior convictions of driving on a suspended or revoked license (§ 14601.2, subd. (a)). The jury was not informed of any of appellant's prior convictions; he stipulated that he had notice that his driver's license was suspended.

Appellant was convicted and sentenced to two years in state prison for driving under the influence of alcohol with three or more priors and to a concurrent 30 days in county jail for driving with a suspended or revoked license. This appeal ensued.

CONTENTIONS ON APPEAL

Appellant contends that the trial court erred when it refused to instruct the jury that the offense of being drunk and disorderly in public (Pen. Code, § 647, subd. (f)) was a lesser related offense to driving under the influence of alcohol.

Next, he claims he was prejudiced by the court's refusal to give the instruction he requested that pinpointed his defense to the charge, and then

---

[1]Further statutory references are to the Vehicle Code unless otherwise stated. Section 23175 provides for increased penalties, including a prison commitment, for persons convicted of a violation of section 23152 when the offense occurred within seven years of three or more separate violations of driving under the influence or reckless driving pursuant to section 23103.5.

by giving, over his objection, instructions drafted by the district attorney which may have misled the jury.

Finally, he asserts the court erred by refusing to bifurcate the trial.

### "Drunk in Public"

██ Appellant contends that since he was not under the influence of alcohol when he drove into the station, but became intoxicated while he was waiting for his car to be repaired, the court should have instructed on "the lesser related offense of being drunk and disorderly in public."

Penal Code section 647, subdivision (f), describes as misdemeanor disorderly conduct the act of being found "in any public place under the influence of intoxicating liquor, . . . in such a condition that he or she is unable to exercise care for his or her own safety or the safety of others, or by reason of his or her being under the influence of intoxicating liquor, . . . interferes with or obstructs or prevents the free use of any street, sidewalk, or public way."

The underlying offense, section 23152, subdivision (a), as relevant to these facts, makes it unlawful "for any person who is under the influence of an alcoholic beverage . . . to drive a vehicle."

██ Appellant relies on *People* v. *Geiger* (1984) 35 Cal.3d 510, 530 [199 Cal.Rptr. 45, 674 P.2d 1303, 50 A.L.R.4th 1055], for the proposition that fairness to the defendant requires that he receive instructions on related but not necessarily included offenses. He contends that his defense satisfies each of the three prongs of the *Geiger* test.

The first prong is that some basis must exist "other than an unexplainable rejection of prosecution evidence, on which the jury could find the offense to be less than that charged." (35 Cal.3d at p. 531.)

██ Appellant satisfies the first prong. Support for his defense can be plucked from the testimony of the gas station employees that his driving was not erratic nor out of the ordinary, and that they did not smell alcohol on his breath, although because of his statements and other conduct they thought he was intoxicated.

In addition, he explained his staggering by presenting evidence that major knee surgery in 1986 and a recent re-injury of the knee caused him to walk with a limp. To explain the slurred speech, he revealed that he had lost his partial plate which contained some of his front teeth. Finally, defense

witnesses testified that he had been in their presence for some time earlier that morning before he had gone to the gas station and he had not drunk alcohol; he attributed his intoxication to "two potent wine coolers at the station."

Consequently, appellant established an evidentiary basis for the instructions. ■ "[A] defendant's right to instructions does not turn on the court's assessment of the strength of the evidence, or on whether there is a conflict in, rebuttal to, or impeachment of the People's evidence. [Citation.]" (*People* v. *Geiger, supra,* 35 Cal.3d at p. 531.)

Second, *Geiger* requires that "the offense must be one closely related to that charged and shown by the evidence. . . . Although some evidence offered by the People or the defendant may indicate that the defendant has committed a crime other than that charged, instructions regarding that crime need not be given unless the evidence is also relevant to and admitted for the purpose of establishing whether the defendant is guilty of the charged offense." (35 Cal.3d at p. 531.)

■ The offenses are closely related. Both require a showing that the defendant is under the influence of an intoxicant, alcohol. Both require the showing of impairment of the defendant's abilities, albeit to a different level. ■ Section 23152 requires the showing that the defendant's "physical or mental abilities are impaired to such a degree that he no longer has the ability to drive a vehicle with the caution characteristic of a sober person of ordinary prudence under the same or similar circumstances." (*People* v. *Cortes* (1989) 214 Cal.App.3d Supp. 12, 15 [263 Cal.Rptr. 113].)

■ Penal Code section 647, subdivision (f), requires a showing that the defendant is unable to exercise care for his own safety or the safety of others or because of his condition, he obstructs a public way. ■ Thus, for both offenses, the penalty attaches for misbehavior. (Cf. *Gilbert* v. *Municipal Court* (1977) 73 Cal.App.3d 723, 726-727 [140 Cal.Rptr. 897]; *Byrd* v. *Municipal Court* (1981) 125 Cal.App.3d 1054, 1058 [178 Cal.Rptr. 480].)

The Attorney General asserts that the defense never conceded that appellant was under the influence of alcohol at any place, let alone that he was unable to exercise care for his own safety on account of intoxication. However, in light of the trial court's refusal to instruct on Penal Code section 647, subdivision (f), this is not surprising. ■ It is clear from the record that, in the words of *Geiger's* third requirement, appellant "reli[ed] on a theory of defense that would be consistent with a conviction for the related offense." (35 Cal.3d at p. 531.)

■ Although it was error to fail to instruct on the related offense, the error "is not prejudicial if 'it is possible to determine that . . . the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions. . . .' [Citations.]" (*People* v. *Turner* (1990) 50 Cal.3d 668, 690-691 [268 Cal.Rptr. 706, 789 P.2d 887].)

Such was the case here. For the jury to have acquitted on the charged offense, and to have convicted on the related offense, it would have to have found that appellant was not driving a vehicle at the time the effects of the alcohol he admitted he had drunk manifested themselves.

The question whether appellant was driving was put squarely to the jury by the instructions.[2] The jury was told: "To constitute a violation of Vehicle Code Section 23152(a)-23175, there are two essential elements: One, driving a vehicle, and, two, while under the influence of an alcoholic beverage.

"The law states that a driver is a person who drives or is in actual or is in full physical control of a motor vehicle. The word 'drive' is defined to mean to cause the vehicle to be in movement. Only a slight movement of the vehicle is necessary to establish that the vehicle is being driven.

"To constitute a violation of Section 23152(a)-23175 of the California Vehicle Code the law does not require that the defendant have actually been observed driving a vehicle or identified by a witness as the driver of the vehicle involved. Sufficient proof of his driving or identity as the driver may be based in whole or in part upon circumstantial evidence and the inferences reasonably drawn therefrom."

These instructions made clear beyond doubt that appellant was not guilty of driving under the influence of alcohol if he was not actually engaged in driving a vehicle at the time his abilities were impaired. In finding for the prosecution, the jury thus necessarily concluded that he was under the influence of alcohol at the time he drove the vehicle into and upon the gas station property. (Cf. *People* v. *Turner, supra,* 50 Cal.3d at pp. 690-691.) The error was harmless.

THE "PINPOINT" INSTRUCTION

■ Next, appellant contends that the court erred in refusing to instruct the jury that if it "found that he was driving a vehicle while impaired to *some*

---

[2]The quoted instructions, submitted by the prosecution, are not CALJIC pattern instructions. The defense objected at trial, but did not raise the issue on appeal. We make no determination as to their propriety. In any event, neither the fact that appellant drove the vehicle nor his identity was placed in issue.

*degree*, that that would be insufficient to find him guilty. Instead, the prosecution had to prove . . . that the defendant's ability to drive was impaired to an *appreciable degree* . . . ."[3] (Italics appellant's.)

■ Appellant asserts that he was prejudiced by the rejection of this instruction because a defendant is entitled, upon request, to an instruction relating the reasonable doubt standard for proof of guilt to particular elements of the crime charged, or which "pinpoints" the crux of his defense. (*People* v. *Sears* (1970) 2 Cal.3d 180, 190 [84 Cal.Rptr. 711, 465 P.2d 847]; *People* v. *Adrian* (1982) 135 Cal.App.3d 335, 336-341 [185 Cal.Rptr. 506].)

■ He complains that the instruction actually given (CALJIC No. 16.831, " 'Under the Influence' Defined") "merely talked about his abilities being impaired to such a degree that he could no longer drive a vehicle with the caution characteristics [*sic* ] of a sober person. This could have been interpreted to mean impaired to any degree, and did *not* tell the jury that they had to find that his abilities were impaired to an appreciable degree. Thus, this instruction was deficient in covering the issue raised in appellant's requested instruction."

This argument was disposed of in *People* v. *Schoonover* (1970) 5 Cal.App.3d 101, 105-107 [85 Cal.Rptr. 69]. The phrase "to an appreciable degree," was first used in *People* v. *Dingle* (1922) 56 Cal.App. 445, 452-453 [205 P. 705], and approved by the Supreme Court in *People* v. *Haeussler* (1953) 41 Cal.2d 252, 261 [260 P.2d 8].

However, "in 1967, the authors of CALJIC, apparently feeling that a more meaningful, understandable and considerably less verbose instruction would be helpful to the jury, adopted CALJIC 971 (rev.). While it would have been comfortable (and safe) for the editors of CALJIC to have stayed with the original instruction which had received the judicial stamp of approval, we feel that the new instruction, nevertheless, properly sets forth the degree of impairment necessary to constitute the offense charged. In other words, . . . the language used by *Dingle* is [not] the *only* way to properly express the test." (*People* v. *Schoonover, supra*, 5 Cal.App.3d at p. 106.)

CALJIC No. 971 (rev.) provided, in pertinent part: " 'A person is under the influence of intoxicating liquor when as a result of drinking such liquor his

---

[3]Appellant's requested instruction read: "You are instructed that the fact if you find that the defendant was driving a vehicle while *impaired to some degree* by an alcoholic beverage, is insufficient standing alone to support a finding of guilty, period. The prosecution must also prove that the defendant's ability to drive was *impaired to an appreciable degree* such that he no longer had the ability to drive with the caution characteristic of a sober person of ordinary prudence.

"If you have a reasonable doubt as to whether the defendant's ability to drive was so impaired, you are instructed to find him not guilty." (Italics added.)

physical or mental abilities are impaired so that he no longer has the ability to drive a vehicle with the caution characteristic of a sober person of ordinary prudence, under the same or similar circumstances.' " (*People* v. *Schoonover, supra*, 5 Cal.App.3d at p. 105.)

The current instruction, CALJIC No. 16.831, has only minor variations: "A person is [under the influence of an alcoholic beverage] . . . when as a result of [drinking such alcoholic beverage] . . . [his] [her] physical or mental abilities are impaired to such a degree that [he] [she] no longer has the ability to drive a vehicle with the caution characteristic of a sober person of ordinary prudence, under the same or similar circumstances . . . ."

"The only thing missing from CALJIC 971 (rev.) [and CALJIC No. 16.831] is the magic phrase, 'to an appreciable degree.' Yet what other meaning can reasonably be given to an instruction which says that the driver's ability to operate a car is so impaired that he no longer has the ability to drive with the cautious characteristics of a sober person of ordinary prudence under the same or similar condition?

"We hold, therefore, that CALJIC 971 (rev.) [and CALJIC No. 16.831] properly define[ ] 'under the influence of intoxicating liquor.' " (*People* v. *Schoonover, supra*, 5 Cal.App.3d at p. 107.)

The second part of appellant's proposed instruction, that if the jury found "that the defendant was driving a vehicle while impaired to some degree . . . [that fact would be] insufficient standing alone to support a finding of guilt," was an incorrect statement of the law. "[I]n a prosecution under this statute it is not necessary to prove any specific degree of intoxication, but . . . the question whether the accused was 'under the influence of intoxicating liquor' is a question of fact to be determined by the court or jury from all the proven circumstances of the case . . . ." (*People* v. *Torres* (1959) 167 Cal.App.2d 36, 38 [333 P.2d 787].)

The court did not err in refusing the instruction.

### THE PROSECUTION'S "TAILORED" INSTRUCTIONS

■ Next, appellant complains because the trial court gave, over his objection, two instructions drafted by the district attorney which "may have misled the jury. . . . One instruction told the jury that appellant need not be 'drunk or intoxicated' to be guilty of the charge, but that he only needed to

be 'under the influence of an alcoholic beverage.'[4]. . . The other instruction said that the manner in which the vehicle was actually driven was not a determining factor in finding guilt or innocence on the charge."

As to the first instruction, in light of the discussion above, we do not believe the jury was misled. The instruction that the law does not require that the driver be drunk or intoxicated or to have consumed some specified number of drinks, was coupled with a proper definition of the meaning of "under the influence." (*People* v. *Haeussler, supra*, 41 Cal.2d at p. 261, and see discussion, *ante*.)

 The second special instruction was confusing and should not have been given. Although the prosecution did not divulge its source, it appears to have come from *People* v. *McGrath* (1928) 94 Cal.App. 520, 524 [271 P. 549], the case cited in the comment to CALJIC No. 16.832 ("Under the Influence Relates to Condition of Driver"), which the court also gave.[5]

The prosecution's special instruction read: "The determining factor in the trial of a case presented under Section 23152(a)—23175 of the Vehicle Code, relates to the mental and physical condition of the driver, that is his ability to operate his vehicle, and not to the manner in which the vehicle was actually driven, nor the result of its operation. The commission of the crime is complete when a person engages in the act of driving a vehicle while under the influence of [an alcoholic beverage] even though there were no other travelers at that time, or, if there were, even though he had driven his vehicle in a manner which did not endanger their safety."

In *McGrath* the question before the court was whether reckless driving was a necessarily included offense of driving under the influence. The language above arose when the court was comparing the elements of the two crimes.[6] Thus the court distinguished the driver's ability to operate his car

---

[4]"The instruction given reads: 'To constitute a violation of Section 23152(a)-23175 of the California Vehicle Code, *the law does not require that the driver be drunk or intoxicated.* The law does not require that the driver have consumed any specified amount [*sic* ] of drinks. All that the law requires is that the driver be "under the influence" of an alcoholic beverage.' " (Italics appellant's.)

[5]CALJIC No. 16.832 provides: "The manner in which a vehicle is being operated is not sufficient in itself to establish that the driver of the vehicle either is or is not [under the influence of an alcoholic beverage] . . . .

"However, the manner in which the vehicle is being operated is a factor to be considered in light of all the proved surrounding circumstances in deciding whether the person operating the vehicle was or was not [under the influence of an alcoholic beverage] . . . ."

[6]The full paragraph from which the prosecution's instruction was taken reads: "Therefore, directing our attention to the two sections of the Vehicle Act above mentioned [(driving under

(relevant in a driving under the influence prosecution) from the manner in which the car is actually being driven, or the result of its operation (relevant to reckless driving).

However, when taken from its context, the language used in the instruction appears to suggest that the jury in a driving under the influence trial may not consider the manner in which the vehicle is driven for any purpose. This is incorrect. ■ Then, as well as now, the jury may consider evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210; *People* v. *Billings* (1917) 34 Cal.App. 549 [168 P. 396]; Cal. Const., art. I, § 28, subd. (d).)

■ If the issue is whether the ability of the driver to operate his vehicle is impaired, the manner in which the vehicle is driven is evidence which tends to prove or disprove that fact. ■ The guilt of an accused may be established by circumstantial as well as by direct evidence, and the right to draw proper inferences from the evidence is a function of the jury. (*People* v. *McGinnis* (1953) 123 Cal.App.2d Supp. 945, 947 [267 P.2d 458].)

■ Furthermore, the special instruction alluded to factors which were not relevant in the instant case, and which could have been confusing (i.e., "even though there were no other travelers at that time, or, if there were, even though he had driven his vehicle in a manner which did not endanger their safety").

the influence, section 112, and reckless driving, section 121)], it will be observed that the single act denounced as a crime by section 112 consists of driving an automobile upon a public highway while under the influence of intoxicating liquor. It is not essential, therefore, to the existence of such an offense that the driver be so intoxicated that he cannot drive safely, nor is it any defense to such crime that he may have exercised due care to avoid injuring other travelers. The expression 'under the influence of intoxicating liquor' has been held to cover not only all well-known and easily recognized conditions and degrees of intoxication, but any abnormal mental or physical condition caused by the indulgence in any degree in intoxicating liquor which impairs, to an appreciable degree, the ability of the driver to operate his car in the manner that an ordinarily prudent and cautious [*sic*] person, in full possession of his faculties, would operate a similar vehicle, under like conditions [citations]. The determining factor in the trial of a case presented under section 112 of said act relates, therefore, to the mental and physical condition of the driver, that is, his ability to operate his car, and not to the manner in which the car is being actually driven, nor the result of its operation. The commission of the crime is complete when such person engages in the act of driving an automobile upon the public highway while under the influence of intoxicating liquor as that term is defined by the decisions of this state [citation], even though there are no other travelers on the highway at that time [citation], or, if there are, that he has driven his car in such manner as did not in fact endanger their safety. The section was designed, said this court in *People* v. *Ekstromer* [(1925) 71 Cal.App. 239, 246 (235 P. 69)], 'to protect the public from the menace of automobiles operated upon the public highway with inadequate or no efficient control in a world of traffic difficult of management under normal conditions. . . .' " (*People* v. *McGrath, supra,* 94 Cal.App. at p. 524.)

CALJIC No. 16.832 is a correct statement of the law. (*People* v. *Rice* (1988) 200 Cal.App.3d 647, 653 [246 Cal.Rptr. 177].) Insofar as the special instruction was in conflict, it was error to give it. ■ Nevertheless, "the *Chapman* [harmless error] test should apply here, for the error is not so serious as to invoke an automatic-reversal rule." (*People* v. *Lee* (1987) 43 Cal.3d 666, 674 [238 Cal.Rptr. 406, 738 P.2d 752], citing *Chapman* v. *California* (1967) 386 U.S. 18, 21 [17 L.Ed.2d 705, 708-709, 87 S.Ct. 824, 24 A.L.R.3d 1065].)

"[T]he conflicting instructions did not affect the composition of the record nor preclude the admission of relevant evidence bearing on the . . . issue. The jury likewise was required to focus upon the 'predicate facts' needed to support a finding on [the issue]. Moreover, here the jury was faced only with conflicting instructions on the . . . issue, rather than wholly erroneous or incomplete instructions on that issue." (*People* v. *Lee*, *supra*, 43 Cal.3d at p. 676.)

■ Was the instructional error harmless? It will "be deemed harmless 'if it can be said beyond a reasonable doubt that the jury's verdict in this case was not affected by the erroneous instruction.' [Citation.]" (*People* v. *Lee*, *supra*, 43 Cal.3d at p. 676.)

■ In the instant case, the jury was instructed to consider the instructions as a whole. The elements of the crime and the meaning of "under the influence" were correctly defined for the jury. Both counsel argued that the manner in which the vehicle was being operated was a factor that could be considered in determining whether appellant was under the influence, which was consistent with CALJIC No. 16.832.

Testimony regarding appellant's driving was admitted. He "pulled in [to the gas pumps] crooked, but people have done that before." He satisfactorily backed up and maneuvered the car to the other side of the pumps and to the side of the station for repairs.

On the other hand, substantial evidence supported the inference that appellant was intoxicated at the time he drove into the station. The attendants testified that appellant's speech was slurred, that he had a swaying, staggering walk, that he stated that he had a six-pack earlier and he was feeling pretty good but he wanted to get something else to drink, and that even subtracting the two wine coolers appellant claimed to have drunk after he arrived at the station, his blood alcohol level was at least .19 percent when he arrived.

On this state of the evidence, we are certain that no reasonable juror, properly instructed on the use he or she could make of the manner in which

appellant drove his car, would have entertained a reasonable doubt that he was under the influence of alcohol at the time he drove his car. Consequently, we hold the instructional error is harmless beyond a reasonable doubt and is not grounds for reversal of the conviction.

## BIFURCATION

 Finally, appellant contends that the court erred in refusing his request to bifurcate the trial of guilt from trial on the priors. On the authority of *People* v. *Bracamonte* (1981) 119 Cal.App.3d 644, 650-655 [174 Cal.Rptr. 191], he contends that once a defendant denies prior convictions, he is entitled to be tried first on the pending offense and later on the alleged prior convictions.

He contends that the court's denial of his motion "forced [him] to 'choose between admitting the prior conviction[s] and losing his opportunity to contest . . . [their] existence and validity, or denying the prior conviction[s] and subjecting himself to the prejudicial effect of evidence that would otherwise have not been admissible.' (*People* v. *Tipton* [(1984)] 160 Cal.App.3d [853] at 857 [206 Cal Rptr. 821].)"

At the hearing on the motion, the trial court inquired whether the priors in *Bracamonte* and *Tipton* were part of the offense or whether they were enhancement priors. Defense counsel replied that the *Bracamonte-Tipton* priors were enhancements, and then argued that the reasoning was applicable to appellant's case because the purpose of bifurcation is to ensure a fair trial. The court denied the motion.

In this court, appellate counsel asserts that the prior conviction allegations are enhancements to which the provisions of *Bracamonte* should apply. "Vehicle Code section 23175 provides that any person who '*is convicted of a violation of 23152* and the offense occurred within seven years of three or more separate violations of section . . . 23152 . . . that person shall be punished by imprisonment in state prison, or in county jail'. [*Sic.*] Thus, section 23152 provides all of the elements of a driving under the influence offense, and section 23175 provides increased penalties (i.e., an enhanced sentence) for a defendant who has three or more prior convictions for alcohol related offenses." (Italics appellant's.)

 Appellant acknowledges that Proposition 8 (Cal. Const., art. I, § 28, subd. (f); hereafter, Prop. 8) requires proof in open court of the fact of a prior felony conviction which is an element of the charged offense. (*People* v. *Valentine* (1986) 42 Cal.3d 170, 181-182 [228 Cal.Rptr. 25, 720 P.2d 913].) However (setting aside the issue whether a prior misdemeanor which is an

element of the offense falls within the ambit of Prop. 8), since he asserts that section 23175 priors are enhancements, he contends that Prop. 8 does not apply.[7]

 "Elements of crime" are "[t]hose constituent parts of a crime which must be proved by the prosecution to sustain a conviction. [Citation.]" (Black's Law Dict. (6th ed. 1990) p. 520.) An enhancement is " ' "an additional term of imprisonment added to the base term" for the particular offense.' [Citation.]" (*People v. San Nicolas* (1986) 185 Cal.App.3d 403, 407 [229 Cal.Rptr. 650].)

 As recently explained in *People v. Bouzas, supra,* 53 Cal.3d 467, Penal Code section 12021 (ex-felon in possession of a firearm) is an example of a crime in which a prior felony conviction is an element of the offense; Penal Code section 666 (petty theft with a prior theft-related offense) is a crime for which the prior is an enhancement.[8]

In *Bouzas,* the court found that the almost 100-year history of judicial treatment of the prior conviction requirement of section 666 disclosed that the prior was a " 'sentencing factor' (as opposed to an 'element' of an 'offense') to which a defendant was entitled to stipulate and thereby keep from the jury." (53 Cal.3d at p. 471.)

The court found significance in several factors. First, "[s]ection 666 is . . . part of title 16 of the Penal Code, which is directed primarily to sentencing and punishment matters, to the exclusion of statutes defining substantive crimes [citation]." (53 Cal.3d at p. 478.)

Second, the language of section 666 "is structured to enhance the punishment for violation of other defined crimes and not to define an offense in the first instance." (53 Cal.3d at p. 478.)

---

[7]The issue regarding section 23175 has been addressed in the recent appellate opinion, *People v. French* (E007246), published after appellant's trial. The Supreme Court granted review on March 14, 1991, but on July 11, 1991, dismissed the review and remanded the cause to the Court of Appeal. French was charged with driving under the influence of alcohol with six prior convictions for driving under the influence of alcohol. (§§ 23152, 23175.)

[8]Subsequent references to "section 666" and "section 12021" refer to these Penal Code sections.

Section 12021 provides, in pertinent part: "(a) Any person who has been convicted of a felony . . . who owns or has in his or her possession or under his or her custody or control any firearm is guilty of a felony."

Section 666 provides: "Every person who, having been convicted of petit theft, grand theft, auto theft under Section 10851 of the Vehicle Code, burglary, robbery, or a felony violation of Section 496 and having served a term therefor in any penal institution or having been imprisoned therein as a condition of probation for that offense, is subsequently convicted of petit theft, then the person convicted of that subsequent offense is punishable by imprisonment in the county jail not exceeding one year, or in the state prison."

Third, "a charge under section 666 merely puts a defendant on notice . . . that if he is convicted of the substantive offense and if the prior conviction and incarceration allegation of section 666 is admitted or found true, he faces enhanced punishment at the time of sentencing." (53 Cal.3d at p. 479.)

And finally, there is a logical basis long recognized in the jurisprudence of this state to distinguish between a prior conviction which is a sentencing factor (as in § 666) and a prior conviction which is an element of a crime (as in § 12021). (*People* v. *Bouzas, supra,* 53 Cal.3d at p. 479.) "Numerous decisions note that when a prior conviction (or similar legal-status factor) is an element of a substantive offense, failure to require a jury determination on that element may improperly impair the People's ability to prove and secure legitimate convictions of these offenses. [Citation.]" (*Ibid.*)

The court explained that prosecutions for petty theft under Penal Code section 484, with sentence enhancements under section 666 "are indeed 'logically distinguishable' [citation] from the section 12021 situation described above. Although it is quite possible that a jury that does not hear evidence of ex-felon status in a section 12021 prosecution might 'rebel and exercise its "naked power" to acquit because [it] might not believe that possessing a concealable firearm should be criminal' ([*People* v. *Hall* (1980) 28 Cal.3d 143] at p. 154 [167 Cal.Rptr. 844, 616 P.2d 826]), a jury that is called on to decide whether a petty theft has been committed faces no similar 'logical' problem. . . . [A] jury need not know that the defendant has been incarcerated for a prior theft-related offense in order to decide the question before it, namely, whether the defendant has committed the essential elements of the substantive crime of petty theft. [Citation.]" (*People* v. *Bouzas, supra,* 53 Cal.3d at pp. 479-480.)

 Subjecting section 23175 to the *Bouzas* analysis, we conclude that the prior conviction provisions of section 23175 are penalty provisions and do not operate to define an offense in the first instance.

First, with the enactment of the first "drunk driving" statute in California in 1913, the Legislature set forth different penalties for first and repeat offenders. The crime was originally defined in section 17 of the Motor Vehicle Act, where intoxicated persons were forbidden to "operate or drive a motor or other vehicle upon any public highway within this state." (See Stats. 1913, ch. 326, § 17, p. 646.)

The penalties were set forth in section 34, subdivision (b). A first offense was "punishable by a fine of not less than ten dollars ($10) nor more than two hundred dollars ($200) or by imprisonment not exceeding thirty days, or

both." A second offense could result in a fine of from $25 to $400, or imprisonment of not less than 10 nor more than 60 days, or both; and a third or subsequent offense was "punishable by imprisonment, without the alternative of fine, of not less than thirty days nor more than ninety days[.]" (See Stats. 1913, ch. 326, § 34, p. 652.)

With the exception of the period between 1919 and 1935, the "drunk driving" statutes retained the provisions for repeat offenders. And, notwithstanding the repeal of the recidivist provisions by section 17 of the Vehicle Act in 1919, that section drastically increased the general range of penalties, providing for "imprisonment in the county jail for not less than six months nor more than one year or by imprisonment in the state prison for not less than one or more than three years or by a fine of not less than five hundred dollars nor more than five thousand dollars." (Stats. 1919, ch. 147, § 11, p. 214.)

In 1935, the Vehicle Code was enacted, and the second-or-subsequent offender provisions reappear in section 502. Since that time, succeeding revisions retained or added to the repeat offender provisions.[9] The current, detailed, comprehensive penalty provisions for first and subsequent offenders were added in 1981 (Stats. 1981, ch. 940, § 32, p. 3571); section 23175 was added in 1983 (Stats. 1983, ch. 637, § 3, p. 2546).

As the use of motor vehicles spread, the state has needed increasingly stiffer penalties to interdict "drunk driving." In 1920, a court placed the problem in perspective by observing: "Interurban traffic has grown in the past ten years into enormous proportions. It is said that during the past year tens of thousands of autos entered this state from other states. Tabulations made since this case was submitted justify the conclusion that ten or twelve thousand vehicles enter the city of Sacramento every ordinary business day. It is common knowledge that the number of auto passengers entering some of our cities on special occasions exceeds, in a single day, the entire population of the city. The great number of autos, their high speed, their use of a nonintelligent motive power, the want of adequate room on roads and streets not laid out for such a congested traffic, and the overwhelming necessity for uniformity in handling the traffic, all have forced the conviction that the proper and orderly handling of this stupendous traffic has

---

[9]For example, a specific provision for license suspension was added to former section 502 in subdivision (b) in 1947. (Stats. 1947, ch. 1452, § 4, p. 3026.) In 1957, subdivision (c) was added to section 502; it precluded a grant of probation or suspension of the execution of the sentence imposed upon a person convicted of a second or subsequent offense. (Stats. 1957, ch. 532, § 2, at p. 1582.) Major revisions occurred in 1959, when the Legislature enacted and amended section 23102 et seq. (Stats. 1959, ch. 3, at p. 1707, amended by Stats. 1959, ch. 1282, § 1, p. 3433), and in 1978, when section 23102 et seq. was added (Stats. 1978, ch. 790, § 4.5, p. 2533, eff. Sept. 18, 1978, operative July 1, 1980).

become a matter of the gravest concern to the people of the entire state." (*Helmer* v. *Superior Court* (1920) 48 Cal.App. 140, 142 [191 P. 1001].)

The threat to public safety before the *Helmer* court was a drunken driver. The court noted: "The fact that he is a menace to life and to private property justifies the state in prescribing penalties for the act, just as it may do for violations of general sanitary, health and comfort laws." (*Helmer* v. *Superior Court, supra,* 48 Cal.App. at p. 146.)

The problem, and the efforts of the Legislature to control it by providing greater penalties, intensified as time passed. In 1979, a court stated: "A major purpose of [the amendments to Vehicle Code sections 23102, 23105, and 23106 in 1973] was to curtail practices which the Legislature viewed as frustrating its intent that drunk driving repeaters should receive greater punishment." (*People* v. *Davis* (1979) 94 Cal.App.3d 215, 220 [156 Cal.Rptr. 395], fn. omitted.)

In 1988, citing over a decade's worth of death and injury statistics for alcohol-related traffic accidents, a court concluded: "It is with these concerns in mind that our Legislature has increased the severity of penalties for driving while intoxicated, requiring mandatory jail time and fines for most first offenders together with license suspension. (§§ 23160, 23161, 23180, 23181.)" (*Rice* v. *Pierce* (1988) 203 Cal.App.3d 1460, 1465 [250 Cal.Rptr. 832].)

It is clear that the purpose of the repeat offender provisions of the "drunk driving" statutes historically has been to specify penalties rather than to define the crime.

The language of the statute also requires this conclusion. It describes the conduct that constitutes the crime as "a violation of section 23152[.]" (§ 23175.) Generally speaking, "the *corpus delicti* of the offense [has long consisted of] proof of the ultimate facts that the automobile in question was being driven . . . by some person who was then and there under the influence of intoxicating liquor"[10] (*People* v. *Ellena* (1924) 67 Cal.App. 683, 686 [228 P. 389]) or who has .08 percent or more, by weight, of alcohol in his or her blood (§ 23152, subd. (b)).

---

[10]We deleted the phrase "on a public highway." In 1972, the Legislature added subdivision (b) to section 23102 (Stats. 1972, ch. 92, § 6, p. 120). It forbade driving a vehicle under the influence of intoxicants "upon other than a highway." In 1981, the statute was amended and renumbered section 23152 and forbade "any person who is under the influence of an alcoholic beverage or any drug, or under the combined influence of an alcoholic beverage and any drug, to drive a vehicle." (Stats. 1981, ch. 940, §§ 12, 33, pp. 3567, 3578; § 23152, subd. (a).)

Additionally, as in *Bouzas*, a charge under section 23175 merely puts a defendant on notice that if he is convicted of the crime of section 23152, and if the prior conviction allegations of section 23175 are admitted or found true, he faces enhanced punishment at the time of sentencing.

Finally, the same logical basis that underlies the distinction between the prior conviction which is a sentencing matter in section 666 and the prior conviction which is an element of the crime in section 12021 supports the determination that section 23175 prior conviction allegations are sentencing matters.

As discussed *ante*, under section 12021, the legal status of the offender makes conduct (possession of a concealable firearm) unlawful, when for a non-offender it might be lawful. For that reason, a jury kept in ignorance of the ex-felon status might feel such behavior did not warrant a criminal conviction. (*People* v. *Bouzas*, *supra*, 53 Cal.3d at p. 479; see *People* v. *Gonda* (1982) 138 Cal.App.3d 774, 781 [188 Cal.Rptr. 295] (conc. opn. of Grodin, J.).)

However, the conduct prohibited by both section 23175 and section 666 is malum in se. (*United States* v. *Barner* (N.D.Cal. 1961) 195 F.Supp. 103, 108; *People* v. *Gonda*, *supra*, 138 Cal.App.3d at p. 781 (dis. opn. of Newsom, J.).) "Whoever drives under the influence of intoxicating liquor risks death and destruction, not only for himself and his property, but for the person and property of innocent bystanders as well. Under these circumstances, it is apparent that such a person is guilty of an innately reprehensible act, which every reasonable person would decry. And this such a reasonable person would do regardless of whether the act was proscribed by statute." (*United States* v. *Barner*, *supra*, 195 F.Supp. at p. 108.)

Consequently, as the Supreme Court pointed out in *Bouzas*, a jury faced with evidence of petty theft (like a jury sitting in a § 23175 trial) would not need proof of the defendant's previous-offender status to determine whether the elements of the crime were established.

From the foregoing, we conclude that prior offender status is not an element of the crime but an enhancement. Hence, appellant's motion to bifurcate the trial should have been granted. Since it was not, the question arises whether appellant's conviction on the substantive charge should be reversed because of this error. We think not. When the court denied the motion, appellant admitted his prior convictions, and they were not revealed to the jury in the trial on the issue of guilt. Consequently, unlike the situation in *Bouzas* where the jury learned of the priors, there was no prejudice. (*People* v. *Bouzas*, *supra*, 53 Cal.3d at pp. 479-480.)

Finally, as to appellant's contention that he would not have admitted the priors if the court had ruled correctly, "[i]f, as is evident from the record, defendant's admission of the prior resulted from the . . . ruling, then that ruling effectively coerced his admission." (*People* v. *Martinez* (1985) 175 Cal.App.3d 881, 893 [221 Cal.Rptr. 258].) Once appellant denied the prior convictions, he was entitled to a separate trial on that issue. (*People* v. *Tipton* (1984) 160 Cal.App.3d 853, 856 [206 Cal.Rptr. 821].)

## DISPOSITION

The judgment of conviction is affirmed. Appellant's admission of the prior convictions and sentence are vacated and the matter is remanded to the trial court for further proceedings on the issue of the prior convictions and for resentencing if necessary. (*People* v. *Tipton, supra,* 160 Cal.App.3d at p. 857.)

Cottle, J., and Elia, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 19, 1991.