[No. B057217. Second Dist., Div. Two. Aug. 12, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
FELIX T. RANDLE, Defendant and Appellant.

**COUNSEL**

Lawrence C. Hersh, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Acting Assistant Attorney General, John R. Gorey, Ernest Martinez and Kenneth C. Byrne, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

RUBIN, J.*—Appellant Felix T. Randle (appellant) appeals from a judgment entered following a jury trial in which he was convicted of second degree robbery in violation of Penal Code section 211. He also admitted to the court that he had suffered a prior Penal Code section 667, subdivision (a) conviction of a serious felony (robbery). Appellant was sentenced to state prison for the upper term of five years for the robbery, and the court imposed an additional five-year enhancement for the prior conviction.

### Contentions on Appeal

Appellant contends as follows on this appeal: (1) The trial court erred in failing to instruct on two lesser included or related offenses. (2) His admission of the prior conviction was constitutionally defective. (3) The modified version of CALJIC No. 2.06 (efforts to suppress evidence) which the trial court gave was an improper pinpoint instruction. (4) Appellant's objection to certain testimony should have been sustained because it was hearsay.

### Statement of Facts

Viewed in accordance with the usual rules of appellate review (*People* v. *Barnes* (1986) 42 Cal.3d 284, 303 [228 Cal.Rptr. 228, 721 P.2d 110]), the evidence established that on March 3, 1990, at approximately 2:30 a.m., James Salz (Salz) was driving his car in the 9500 block of Alcott Street in the County of Los Angeles. Salz parked, got out of his car, and was approached by a white sedan with two occupants. Appellant was the driver. The passenger asked directions; a conversation ensued; Salz was asked if he could spare two or three dollars; he obliged; and then the passenger got out of the car.

Salz backed away, but the passenger rushed him and spun him around and up against the white sedan. Salz was pushed in a position where he was facing the sedan, with the passenger behind him and Salz's head in the open window looking in the direction of the driver. Appellant, the driver, told Salz that all they wanted was money and threatened him with a gun. (Salz did not testify that he saw a gun, nor was one found.) Initially, appellant remained in the car, while Salz struggled with the passenger. Thereafter, appellant got out of the car, and hit Salz in the face, causing him to fall and to drop his car keys. While on the ground, Salz was told not to get up or they would kill him. He was also told not to look up. Salz next heard both the white sedan

---

*Judge of the Municipal Court for the Santa Monica Judicial District sitting under assignment by the Chairperson of the Judicial Council.

and his own car being driven away. He then ran to a friend's residence and called 911.

Some 30 minutes later, the police told Salz they had found his car and had a suspect they wanted him to identify. After taking Salz to the car's location, the police admonished him not to make an identification unless he was positive. Salz positively identified appellant as the driver of the white sedan. Appellant was still wearing the same long-sleeved white dress shirt he had on earlier.

Approximately a month later, a six-man lineup was conducted. Although Salz was unable to identify positively appellant at the lineup, he narrowed his choices to two persons. Salz testified that appellant was one of the two individuals, but he could not differentiate between them because of their similar hairstyles. He also testified that appellant's hairstyle had changed from the day of the incident to the day of the lineup.

At the preliminary hearing, Salz was not 100 percent certain that appellant was the person who had robbed him of his car but stated that appellant reminded him of the person. At trial, Salz positively identified appellant as the person who assaulted and robbed him.

*Discussion*

A. *The Trial Court's Refusal to Instruct on Lesser Included or Related Offenses.*

The sole count contained in the information was robbery. At trial, appellant asked the court to give CALJIC No. 14.35 (grand theft of an automobile; Pen. Code, § 487, subd. 3) and CALJIC No. 14.36 (unlawful taking of a vehicle; Veh. Code, § 10851). The trial court refused to give either instruction, for reasons that apparently were discussed in an unreported conference with counsel.

The parties do not seriously disagree on the general legal principles governing what constitute lesser included or related offenses. Thus, the Attorney General concedes that as a general rule grand theft is a lesser included offense to robbery. "Theft is a lesser included offense of robbery without the additional element of taking by force or fear." (*People* v. *Brito* (1991) 232 Cal.App.3d 316, 325 [283 Cal.Rptr. 441], quoting *People* v. *Ramkeesoon* (1985) 39 Cal.3d 346, 351 [216 Cal.Rptr. 455, 702 P.2d 613].)

Similarly, since the information did not specifically allege that what was taken in the robbery was a vehicle, appellant concedes that the unlawful

taking of a vehicle offense could only be a lesser related not a lesser included charge. Appellant relies on general language in *People* v. *Geiger* (1984) 35 Cal.3d 510, 531-532 [199 Cal.Rptr. 45, 674 P.2d 1303, 50 A.L.R.4th 1055] [vandalism as a lesser related offense to burglary] for the proposition that Vehicle Code section 10851 is a lesser related offense. The Attorney General does not seriously quarrel with the notion that under the appropriate circumstances the unlawful taking of an automobile could be a lesser related offense to robbery but contends that under the facts of this case there is no evidence to support the giving of such an instruction.

We begin our discussion with a review of the evidence that conceivably bears on the issue of the lesser offenses. Appellant did not testify. However, the prosecution introduced a statement which appellant made to a police detective who interviewed him after his arrest. The detective testified that appellant told her "that he had been in West Los Angeles that evening with his girlfriend; and that approximately five minutes before the police stopped him and arrested him, he had gotten in an argument with his girlfriend, and she had kicked him out of the car. He said he was stranded and—looked over, and there sitting by the curb was a car with the door open, and the motor running, and the keys in the ignition. And he knew it was wrong to steal the car, but he needed a ride home, so he got into it and was arrested five minutes later." On further questioning appellant stated that he did not know the name of his girlfriend or the street where she had left him. According to the detective, appellant then said, "You have got me on grand theft auto but not a robbery."

In determining whether the above evidence supports the giving of instructions on lesser offenses, we first review the applicable principles of law on the circumstances under which a trial court is obligated to give such instructions. For the most part, the parties are in agreement on the law. ■ A trial court must give requested instructions on lesser offenses whenever there is substantial evidence enough to deserve consideration and which supports a finding that all of the elements of the lesser offense, but not all the elements of the greater offense, were present. (*People* v. *Wickersham* (1982) 32 Cal.3d 307, 323-324 [185 Cal.Rptr. 436, 650 P.2d 311]; *People* v. *Sedeno* (1974) 10 Cal.3d 703, 715-716 [112 Cal.Rptr. 1, 518 P.2d 913], revd. on other grounds, *People* v. *Flannel* (1979) 25 Cal.3d 668, 684, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1]. See *People* v. *Geiger, supra,* 35 Cal.3d 510; 531-532 [test for lesser related offenses].) In determining whether there is evidence to support a conviction of the lesser but not the greater offense, the court may not determine the credibility of witnesses. (*People* v. *Wickersham, supra,* 32 Cal.3d at p. 324.) ■ Since the failure to instruct on lesser included offenses may undermine a defendant's right to a fair trial (*People* v.

*Ramkeesoon, supra,* 39 Cal.3d 346, 351), trial courts have a sua sponte obligation to instruct on lesser included offenses. (*People* v. *Wickersham, supra,* 32 Cal.3d at p. 323.)[1]

However, in each of the above cited decisions and in the other cases relied upon by appellant, it is the same *act* which the defendant argued constituted the lesser offense, and which the prosecution argued constituted the greater offense. Here, appellant seeks an instruction on lesser offenses which, if they took place at all, took place wholly separate from the Salz robbery and at a time and place different than the robbery. This difference distinguishes the case at bench from the principal authorities on which appellant relies.

For example, in *Wickersham,* the only act was the homicide of the defendant's husband. The Supreme Court reversed a murder conviction because testimony that the defendant acted out of fear and/or discharged the gun accidentally required the trial court to instruct sua sponte on manslaughter. (*People* v. *Wickersham, supra,* 32 Cal.3d 307, 328.) In *Sedeno,* the Supreme Court reversed a murder conviction for failure to instruct on involuntary manslaughter based on defendant's alleged diminished capacity. (*People* v. *Sedeno, supra,* 10 Cal.3d 703, 720.) And in *Ramkeesoon,* the court reversed a conviction based on a robbery/felony-murder theory where defendant testified that he did not form the intent to steal until after the victim had been killed. That testimony, if believed, would have meant the defendant was guilty of grand theft and would have eliminated robbery as the basis for the felony-murder charge. (*People* v. *Ramkeesoon, supra,* 39 Cal.3d 346, 351.)

Closer to the facts of this case is *People* v. *James* (1984) 157 Cal.App.3d 381 [203 Cal.Rptr. 716]. There the defendant was charged with violating Vehicle Code section 10851, as a felony. He testified at trial that he had no intention of permanently depriving the owner of the car and provided an explanation which, if believed, would support a conviction only of joyriding in violation of Penal Code section 499b, a misdemeanor. The Court of Appeal reversed, concluding that the trial court should have instructed the jury on the lesser offense. (157 Cal.App.3d at p. 388.)

Similarly, in *People* v. *Geiger, supra,* 35 Cal.3d 510, 517, the case which recognized the lesser related offense doctrine, the same acts of breaking a window and entry into a closed building, could have constituted the greater (burglary) or the lesser (vandalism) offenses.

---

[1]There is no duty to instruct sua sponte on lesser related offenses. (*People* v. *Geiger, supra,* 35 Cal.3d 510, 530.) The issue of the trial court's sua sponte obligation is not before us since below appellant requested that the trial court give the relevant instructions on the lesser offenses.

In the case at bench, defendant does not contend he committed the act with which he is charged but possessed a different mental state, or that there were other circumstances, which would support his conviction only of a lesser crime. He contends he committed an entirely different act which happens to constitute a crime but one which took place after and at a different location than the crime charged. It is true that the crime he says he committed may, as an abstract proposition, be a lesser included or related offense, but *factually* it is unrelated to the crime of robbery with which he had been charged. Appellant's position is essentially that as long as he introduces evidence of any other crime which happens to be a lesser offense to that which he is charged he is entitled to have the jury instructed on that separate crime. Under that theory, if appellant had testified that he could not have committed the Salz robbery because at the same time he was committing grand theft auto of some other car, the jury should be instructed on grand theft auto since grand theft is a lesser included offense to robbery. He has cited no authority for this fanciful proposition, and we are aware of none.

Although the cases which have analyzed whether one crime is a lesser included or related offense to another have focused primarily on the legal elements of the crimes in question (e.g. *People* v. *Brito, supra,* 232 Cal.App.3d 316, 325 [robbery/theft]; *People* v. *James, supra,* 157 Cal.App.3d 381, 388 [unlawful taking of auto/joyriding]), implicit in their analysis is that the acts which would support the greater and the lesser offenses must essentially be the same. "The doctrine of included offenses is applicable only when the same act is relied upon for more than one conviction." (*People* v. *Greer* (1947) 30 Cal.2d 589, 600 [184 P.2d 512] [in context of double jeopardy defense]. See also *People* v. *Alva* (1979) 90 Cal.App.3d 418, 428 [153 Cal.Rptr. 644] ["[W]here an offense cannot be committed without necessarily committing another offense, the latter is a necessarily included offense."].)

Indeed the notion that a lesser included offense must be part of the greater offense not only legally but factually was recognized in the early cases in which the doctrine was developed. (See *People* v. *Kerrick* (1904) 144 Cal. 46, 47 [77 P. 711] ["[T]he lesser offense must not only be part of the greater in fact, but it must be embraced within the legal definition of the greater as a part thereof."]. See also *People* v. *McGrath* (1928) 94 Cal.App. 520, 522 [271 P. 549].)

In his supplemental letter brief, appellant directs our attention to three cases which he contends support his position that the trial court was obligated to instruct on lesser included/related offenses even though such offenses, if they took place at all, occurred at a different time and place than the charged offense. These cases do not support appellant's position.

In *People* v. *Miller* (1974) 43 Cal.App.3d 77 [117 Cal.Rptr. 491], the victim testified he was robbed by the defendant who had a gun. The defendant testified he took the victim's money through a con game, and had no gun. Although there happened to be a difference in the testimony regarding the exact time the incident took place, there was only one act: it was either a robbery or grand theft. This is a classic example of a lesser included offense not present here.

In *People* v. *Weathington* (1991) 231 Cal.App.3d 69 [282 Cal.Rptr. 170], again there was one act, the only question was whether the defendant's level of intoxication had reached the legal limit while he was driving to a gas station or while he was waiting at the station for his car to be fixed.

Finally, in *People* v. *White* (1986) 185 Cal.App.3d 822 [231 Cal.Rptr. 569], the lesser offense was accessory after the fact (Pen. Code, § 32) to the very murder with which defendant was initially charged. By its definition, the crime of accessory after the fact is inextricably connected to the underlying charge to which it relates. No such connection is present here. On the contrary, appellant contends he had no connection to the underlying crime of robbery and had an alibi for his whereabouts when that crime was committed. Therefore, we decline appellant's invitation to extend *White* to the facts before us.

This is not to say that we disagree with the accepted principle that theft may be a lesser included offense to robbery. (See *People* v. *Ramkeesoon, supra*, 39 Cal.3d 346, 351.) We only conclude that there is no evidence that such lesser offense occurred at the time Salz's car was taken from him. The defense here was that appellant was not present when the robbery took place, and that it must have been somebody else driving the white sedan because he was with his girlfriend elsewhere. The defense was not that the manner in which appellant stole the car from Salz caused the crime to be something other than robbery. Under these circumstances it was not error to refuse to instruct on other crimes which necessarily could only have been committed at a time and place different than the charged offense.

## B. *The Admission of the Prior Robbery Conviction*

Appellant next contends that his admission to the trial judge of a prior robbery conviction was constitutionally defective because he did not expressly waive his right to a jury trial on the prior conviction. In *In re Yurko* (1974) 10 Cal.3d 857, 861-865 [112 Cal.Rptr. 513, 519 P.2d 561], the Supreme Court held that trial courts are constitutionally required to advise defendants who intend to admit prior convictions that they have the right to

a jury trial on the prior and in such trial they have the right to confront and cross-examine witnesses and the right against self-incrimination. The court further ruled that waivers of such rights must be reflected in the record. Finally, the court concluded that as a judicially created rule of criminal procedure, trial courts must advise defendants of certain penal consequences of the plea.

The record here reveals that while the jury was still deliberating, counsel for defendant indicated to the trial judge that his client wished to admit the prior conviction. What transpired next is set forth below:

"[District Attorney]: Sir, is Felix Tyrone Randle your true and correct name?

"[Appellant]: Yes, sir.

"[District Attorney]: Are you also known as Damon Rayford?

"[Appellant]: Yes, sir.

"[District Attorney]: Are you also known as Tony Lawrence?

"[Appellant]: Yes.

"[District Attorney]: In information number SA002678, as it charges in count 1 that on or about March 3rd, 1990, in the county of Los Angeles, that you violated Penal Code section 211, a felony, commonly known as second degree robbery?

"Also, in the same information, it is alleged by amendment that under the name of Tony Lawrence, that on or about the 20th day of December, 1988, in the Superior Court of the State of California for the County of Los Angeles, that you were convicted for a violation of Penal Code section 211, robbery in the second degree, in case number A650402, within the meaning of Penal Code section 667, subsection 'A.'

"Do you understand the nature of this prior conviction, charge against you?

"[Appellant]: Yes, sir.

"[District Attorney]: And do you admit suffering this prior conviction?

"[Appellant]: Yes, sir.

"[District Attorney]: Thank you.

"THE COURT: Mr. Randle, you have the right to have your prior conviction tried by a jury.

Do you understand that, sir?

"[Appellant]: No, not exactly.

"(The defendant and his counsel confer sotto voce.)

"[Appellant]: Okay, yes, sir.

"THE COURT: Do you understand that?

"[Appellant]: Yes, sir.

"THE COURT: In that trial, you have the privilege against self-incrimination, the right to confront the accusers with respect to the prosecution's proof of the prior conviction, and the prison term served.

"Do you understand that you have the right to do that?

"[Appellant]: Yes, sir.

"THE COURT: Do you give up your privilege against self-incrimination?

"[Appellant]: Yes, sir.

"THE COURT: You also give up your right to confront the accusers with respect to the prosecutor's proof of the prior conviction or the prison term that is served?

"[Appellant]: Yes, sir."

The trial judge thereafter advised appellant of what would be the sentencing consequences of his admission of the prior conviction if the jury were to convict him of the underlying offense, and asked appellant again if he admitted the prior. Appellant replied in the affirmative.

The record thus discloses that at no time did appellant expressly waive his right to a jury trial of the prior conviction, only that there was an express advisement of the right to a jury trial, and there was an express advisement and waiver of the rights of confrontation and cross-examination and against

self-incrimination. We now turn to the question of whether such failure requires the reversal of the five-year sentence enhancement which the trial court imposed.

In *People* v. *Howard* (1992) 1 Cal.4th 1132, 1175 [5 Cal.Rptr.2d 268, 824 P.2d 1315], the Supreme Court held that "*Yurko* error involving *Boykin/Tahl* admonitions should be reviewed under the test used to determine the validity of guilty pleas under the federal Constitution. Under that test, a plea is valid if the record affirmatively shows that it is voluntary and intelligent under the totality of the circumstances." (*Id.* at p. 1175.) Applying that test to the case before it, the *Howard* court upheld the admission of the prior there even in the absence of an express advisement or waiver of the right against self-incrimination or any colloquy between the court, counsel and the defendant on those subjects. (*Id.* at p. 1180.)

Appellant relies on *People* v. *Collins* (1986) 42 Cal.3d 378, 391, footnote 12 [228 Cal.Rptr. 899, 722 P.2d 173], and *People* v. *Holmes* (1960) 54 Cal.2d 442, 444 [5 Cal.Rptr. 871, 353 P.2d 583] for the proposition that a defective waiver of the right to a jury trial is reversible per se. Initially, we note that neither case considers the imperfect waiver of a jury trial of a prior conviction. *Collins* dealt with the procedure to be utilized when there is *Castro* error concerning use of prior convictions to impeach. *Holmes* reversed, without stating the standard of review, defendant's implied waiver of a jury trial. There were no admissions of prior convictions.

At the time appellant filed his opening brief, *Howard* had not yet been decided. After respondent had relied upon *Howard* in its brief, appellant filed no reply brief, implicitly conceding *Howard's* application.

At oral argument appellant suggested that *Howard* should not be applied here because the admission of the prior conviction preceded the decision in *Howard*. Appellant has cited no authority for such proposition. *Howard*, of course, applied its standard to the defendant there, and a change in appellate standard has been applied in other contexts to trial court proceedings which predate the newly adopted standard. (See *People* v. *Knight* (1992) 6 Cal.App.4th 1829 [8 Cal.Rptr.2d 827] [change in standard of review in submission on transcript cases]; cf. *People* v. *Dyer* (1988) 45 Cal.3d 26, 64 [246 Cal.Rptr. 209, 753 P.2d 1] [change in standard of review for error in instruction on mental state required of aiders and abettors].) We, therefore, conclude that review of appellant's admission of his prior conviction is appropriately governed by *Howard's* totality of the circumstances test. We now turn to an application of *Howard* to the admission of the prior conviction here.

Before appellant admitted the prior conviction, the trial judge advised him that it was "a little unusual" to take the admission before the jury announced its verdict. Appellant acknowledged he had discussed this subject with counsel, understood he could wait until after the verdict came in, and said, "We would have to do it either way it went, so it doesn't matter." The trial judge then proceeded to take the admission of the prior conviction.

At the time, the jury was actually deliberating on the underlying offense. Indeed, appellant's counsel asked the trial judge to make sure that the district attorney talked softly so the jury, which was in the next room, could not hear the admission of the prior conviction. After the district attorney started to give certain advisements concerning the prior, the jury asked for a recess, and the proceedings were momentarily suspended as the jurors filed past appellant and counsel and out of the courtroom. After the jurors had left, the district attorney continued with the advisements as to the prior, as is reflected in the passage quoted above.

At one point in the advisements, appellant appeared not to understand that he had a right to a jury trial on the prior, had an unreported conversation with counsel, and then told the trial judge that he understood that right. He proceeded to waive expressly his rights to confront and cross-examine witnesses and against self-incrimination.

■ Based on the foregoing, we conclude that appellant voluntarily and intelligently gave up his right to a jury trial and the other two *Boykin/Tahl* rights with respect to the prior convictions. Indeed, appellant's waiver of his right to a jury trial on the prior could not have been more graphically presented than by the scene of the jurors individually filing out of the courtroom as appellant was admitting his prior conviction. Appellant knew that, by admitting the prior conviction at a time when the jury was still deliberating, he was giving up his right to have that jury decide the issue of the prior. Rather, that issue was being decided, by his admission to the trial judge in the jury's absence, at the very time the jurors were still deliberating.

Accordingly, we uphold the trial court's five-year sentence enhancement based on appellant's prior conviction of robbery.[2]

---

[2]Even if we were not to apply the *Howard* standard of review we would uphold the prior conviction.

As the court in *Howard* recognized (*People* v. *Howard, supra*, 1 Cal.4th 1132, 1174-1175), prior to that decision most of the Supreme Court's pronouncements on the standard of review for *Yurko* error were only by way of analogy or dictum. (See *People* v. *Wright* (1987) 43 Cal.3d 487, 493-495 [233 Cal.Rptr. 69, 729 P.2d 260] [submission on transcript, reserving issue of guilt]; *In re Ibarra* (1983) 34 Cal.3d 277, 283, fn. 1 [193 Cal.Rptr. 538, 666 P.2d 980]

## C. *Modified CALJIC 2.06 as a Pinpoint Instruction*

■ Appellant also contends the trial court erred in giving a modified version of CALJIC No. 2.06. The instruction as given (with language added by the trial court in brackets) is set forth in the margin.[3] Evidence at trial indicated that appellant had a white buttoned shirt after his arrest, but when appellant was booked the white shirt had been removed. Additionally, there was evidence that during the pendency of the case appellant's hairstyle had changed.

Appellant does not contend that a change in a defendant's appearance between the commission of the act and trial is not evidence from which a trier of fact could infer consciousness of guilt. "A consciousness of guilt can reasonably be inferred from [defendant's] action in shaving off his beard shortly after the time of the incident in the park." (*People* v. *Slutts* (1968) 259 Cal.App.2d 886, 893 [66 Cal.Rptr. 862].) Appellant argues, however, that the trial court's insertion of the phrase "by change of appearance" caused CALJIC No. 2.06 to be an improper pinpoint instruction.

In *People* v. *Wright* (1988) 45 Cal.3d 1126 [248 Cal.Rptr. 600, 755 P.2d 1049], the Supreme Court upheld the trial court's rejection of a proposed defense instruction which focused the jurors' attention on the particular evidence which they could consider on the issue of reasonable doubt. (*Id.* at p. 1135.) The court stated that while it was appropriate for instructions to pinpoint the theory of the defense, it was improper for the instructions to imply "certain conclusions from specified evidence." (*Id.* at p. 1137.)

The instruction at issue here does not focus on specific evidence. A contrary conclusion might have been reached if the trial court had specifi-

---

[plea bargain guilty plea]; *In re Ronald E.* (1977) 19 Cal.3d 315, 320-321 [137 Cal.Rptr. 781, 562 P.2d 684] [admission of truth of allegations of misconduct in juvenile proceedings].) The one Supreme Court case which squarely addressed the standard of review for *Yurko* error and which was cited in *Howard* was *People* v. *Guzman* (1988) 45 Cal.3d 915, 968 [248 Cal.Rptr. 467, 755 P.2d 917]. Inexplicably, the *Guzman* opinion did not mention the other Supreme Court pronouncements contained in the cases cited above.

In *Guzman*, the trial court failed to advise the defendant that he had a right to a jury trial on the issue of the prior, telling him only that he had a right to a hearing. Nevertheless, the court, using a harmless error test of review, found the error to be harmless. If we were to apply the *Guzman* formulation of the standard, we would conclude the error here was harmless. In the words of the *Guzman* court, there was no reasonable probability that if appellant had been asked to waive expressly the right to a jury trial he "(i) would have denied the priors and (ii) they would not have been found true." (45 Cal.3d at p. 968.) Also as was the case in *Guzman*, there is nothing in the record that suggests either that appellant did not suffer the prior robbery conviction or that he did not serve time in prison as a result of that conviction. (Pen. Code, § 667, subd. (a).)

[3] "If you find that a defendant attempted to suppress evidence against himself in any manner, such as [by change of appearance], such attempt may be considered by you as a circumstance tending to show a consciousness of guilt. However, such conduct is not sufficient by itself to prove guilt, and its weight and significance, if any, are matters for your consideration."

cally directed the jury's attention to the change of hairstyle or the missing shirt. No such pinpointing was present here. Instead, the trial court only tailored the instruction to the generic type of consciousness of guilt disclosed by the evidence. Unlike other forms of consciousness of guilt, such as physical destruction or concealment of evidence, flight, bribery, or threats to witnesses (see 1 Witkin, Cal. Evidence (3d ed. 1986) §§ 654-664; Fricke & Alarcon, Cal. Criminal Evidence (8th ed. 1971) §§ 91-97), here the suppression of evidence was accomplished by a change of appearance. CALJIC No. 2.06 itself recognizes that there can be a variety of efforts to suppress or conceal evidence and provides as examples in the text of the instruction from which the trial court may choose: "[by the intimidation of a witness] [by an offer to compensate a witness] [by destroying evidence] [by concealing evidence] [by _____]."

In *People* v. *Fitzpatrick* (1992) 2 Cal.App.4th 1285, 1296-1297 [3 Cal.Rptr.2d 808], the court rejected the defendant's argument that CALJIC No. 2.06 was an improper pinpoint instruction. There the trial court selected from the various examples of suppression of evidence listed in CALJIC No. 2.06 the category "by destroying evidence." There is no difference between what the court approved in *Fitzpatrick* and what the trial court did below in adding the language "by change of appearance" except that the categories selected in the two cases were different because the evidence was different. Here, the trial court properly drew to the jury's attention that it was appellant's effort to disguise himself that was the applicable form of suppression of evidence. Such guidance was proper.

D. *The Detective's Testimony Concerning Salz's Difficulty in Identifying Appellant*

The investigating officer testified over objection that shortly after the lineup Salz had told her that he had difficulty in making a positive identification at the jail lineup because appellant had changed his hairstyle. Appellant renews the contention made below that the testimony was hearsay and should have been excluded.

Respondent argues that the statement was a prior consistent statement admissible under Evidence Code sections 791 and 1236. A prior consistent statement is admissible if either of the following is present: (1) the statement is offered after evidence of a statement made by the witness that was inconsistent with the witness's testimony (Evid. Code, § 791, subd. (a)); or (2) an express or implied charge has been made that the witness's testimony is recently fabricated or influenced by bias or other improper motive (Evid. Code, § 791, subd. (b).)

At trial Salz testified that he had difficulty identifying appellant at the lineup because of appellant's change of hairstyle between the date of the

robbery and the date of the lineup. He also testified he was positive of his in-court identification of appellant at trial. On cross-examination, he admitted that at the preliminary hearing he was unable positively to identify appellant. This testimony subjected Salz to the implied charge that his positive identification at trial was recently fabricated and that his statement at trial that appellant had changed his hairstyle was a weak and belated effort to explain why he was unable positively to identify appellant previously. In the face of such a charge the prosecution was entitled to elicit testimony from the investigating officer that Salz had told her prior to trial and prior to the preliminary hearing that he had difficulty identifying appellant at the lineup because of the change in hairstyle, thus dispelling the contention that his testimony at trial was recently fabricated.

The judgment is affirmed.

Gates, Acting P. J., and Fukuto, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 19, 1992.